STATE OF NEBRASKA, APPELLEE, V. ARTHUR H. BARKER,
APPELLANT.
436 N.W.2d 520

Filed March 3, 1989.   No. 88-578.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Arthur H. Barker appeals from the sentence imposed for his conviction of manslaughter. In view of Barker's contention, we examine the background for Barker's conviction and sentence.

Barker and the victim lived in separate apartments in the same building. Approximately 1 week before the homicide, the victim's cat entered the apartment building's basement and destroyed some of Barker's property. On the day of the homicide, Barker, who had a night job, had been sleeping in the early afternoon and was awakened by a telephone call, when he heard a noise in the basement and "knew it was that damn cat."

With the intention of killing the cat, Barker went to the basement, picked up a piece of clothesline rope, and found the victim's cat. As Barker grabbed the cat and squeezed the animal, the victim entered the basement. An argument ensued concerning the cat and damage to Barker's property. When the victim approached Barker, who was still clutching the cat and rope, Barker struck the victim, who reeled backward. Recovering, the victim rushed at Barker, who dropped the cat and began struggling with the victim. In the course of the struggle, Barker, from behind the victim, wrapped the rope around the victim's neck. As the victim wrestled to free herself,

Barker kept pulling the rope "tighter and tighter" until the victim "went limp." Without any intervening attempt to revive the victim, Barker took the victim's body to her apartment, where he placed the body in a bathtub of water. Early the next morning, Barker took the victim's body to a lake and "dumped" the body in the water, where the floating corpse was later discovered by a passerby. An autopsy disclosed that the cause of the victim's death was asphyxial ligature strangulation of the neck. Police investigation led to Barker, who admitted that he had strangled the victim.

Concerning the victim's death, the State charged Barker with second degree murder, but the jury found Barker guilty of manslaughter. See Neb. Rev. Stat. § 28-305 (Reissue 1985). Barker appealed his manslaughter sentence. On account of a certain irregularity which occurred in conjunction with Barker's sentencing, in March of 1988 this court set aside Barker's sentence and remanded "this matter to the district court for further proceedings, namely, a sentence hearing to be conducted and sentence imposed by a judge other than the judge who imposed sentence on Barker." *State v. Barker*, 227 Neb. 842, 854, 420 N.W.2d 695, 702-03 (1988).

After remand, another district judge was selected to sentence Barker. On May 5, 1988, the sentencing court, "for the express purpose of being presented to the Court for its consideration in sentencing the Defendant," ordered that the Department of Correctional Services forward to Barker's lawyer various records regarding Barker's conduct during imprisonment, which included: "Records of the Defendant's involvement in educational programs [and any] other reports prepared by the Defendant's counselors or unit supervisors detailing his conduct while incarcerated."

At the sentence hearing on June 17, the court remarked: "I should say that as to a sentencing hearing, except that in capital cases, I don't think that there's any requirement for a sentencing hearing as such, but certainly at the sentencing, which this is, I'll give an opportunity to the parties to certainly present their positions." When Barker's lawyer offered the reports produced pursuant to the court's May 5 order, that is, records of Barker's classification and conduct at the state

penitentiary while in the custody of the Department of Correctional Services, the court commented:

> Well, Exhibit 1 [custodial reports and data], that's been proffered, will be received as part of the record and part of the PSI [presentence investigation]. . . . I should just indicate that it's the Court's opinion that the status and situation of the defendant and his good conduct or lack of good conduct is probably irrelevant to these proceedings here today, but it will become part of the record.

Later in the sentence hearing, the court stated: "I took considerable time in reviewing all facets of this case that the Court was privy to; and I feel that . . . the facts of this case . . . justify a substantial sentence." The court then sentenced Barker to imprisonment for a term of 6 ⅔ to 20 years, the same sentence imposed before Barker's first appeal to this court. See *State v. Barker, supra.*

Barker contends that the district court erroneously ruled that the data from the Department of Correctional Services was irrelevant to imposition of a sentence and that such ruling implicitly expresses the court's disregard of relevant information pertinent to an appropriate sentence for Barker. Therefore, Barker argues that the court abused its discretion in the sentence imposed, which resulted in an excessive sentence.

Notwithstanding the sentencing court's gratuitous remark, "probably irrelevant," in reference to the data from the Department of Correctional Services, we disagree with Barker's view that the court ruled that the data was irrelevant to sentencing and, therefore, excluded the information from consideration in deciding what sentence to impose. While the sentencing court commented that the information in issue was "probably irrelevant," the court received the information as a "part of the record" and a supplemental part of the presentence investigation used in sentencing Barker. Also, the sentencing judge acknowledged that he had taken "considerable time in reviewing all facets of this case that the Court was privy to," which unquestionably included the record for Barker's case and the presentence report consisting of nearly 150 pages, all of which we have also reviewed in connection with Barker's appeal.

Contrary to Barker's assertion that the sentencing court disregarded the information in issue, the record requires our conclusion that the sentencing court, as expressly stated by that court, did receive and consider the information pertaining to Barker's conduct during incarceration. Even if the custodial reports were removed from consideration, the sentence imposed on Barker is justified on the basis of other information received by the sentencing court in Barker's case, namely, the record and presentence investigation report.

The sentence imposed for Barker's conviction of manslaughter is within statutory limits. See Neb. Rev. Stat. § 28-105(1) (Reissue 1985). "[I]n the absence of an abuse of discretion, a sentence imposed within statutory limits will not be disturbed on appeal." *State v. Dillon*, 222 Neb. 131, 136, 382 N.W.2d 353, 357 (1986).

Barker has failed to show an abuse of discretion regarding the sentence imposed on him. We affirm the sentence imposed on Barker.

However, there remains a source of concern to this court. As previously mentioned and as the result of Barker's first appeal, we remanded "this matter to the district court for further proceedings, namely, a sentence hearing . . . ." *State v. Barker*, 227 Neb. 842, 854, 420 N.W.2d 695, 702-03 (1988). After remand, the district court expressed the sentiment: "I should say that as to a sentencing hearing, except that in capital cases, I don't think that there's any requirement for a sentencing hearing as such, but certainly at the sentencing, which this is, I'll give an opportunity to the parties to certainly present their positions." From the district court's remark, we infer that, were it not for our mandate in the first appeal, Barker, and any other defendant convicted in a noncapital case, would not be entitled to or receive a hearing to determine the appropriate sentence.

As the U.S. Supreme Court observed in *Bradley v. United States*, 410 U.S. 605, 609, 93 S. Ct. 1151, 35 L. Ed. 2d 528 (1973): "The term 'prosecution' clearly imports a beginning and an end. . . . In the legal sense, a prosecution terminates only when sentence is imposed." To state that sentencing is an important part of the criminal justice system and prosecution of a defendant is an expression of a truism.

The U.S. Supreme Court has held that the requirements of due process are not suspended by a conviction in a capital case, but continue throughout the sentencing process in cases involving the death penalty. See *Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977). Also, the Supreme Court has held that due process allows a sentencing judge to receive information from persons who were not confronted or cross-examined by the defendant. See *Williams v. New York*, 337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949).

Nevertheless, the U.S. Supreme Court has concluded that due process demands that a sentencing judge have relevant information as the basis for a sentence imposed in a noncapital case. For example, *Townsend v. Burke*, 334 U.S. 736, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948), involved Townsend's convictions for burglary and robbery, which were crimes not punishable by the death penalty. On the assumption that Townsend had prior convictions on charges of larceny and burglary, whereas, in fact, Townsend had been acquitted on those charges, the judge sentenced Townsend to imprisonment. The Supreme Court stated in *Townsend*:

> [I]t savors of foul play or of carelessness when we find from the record that, on two other of the charges which the court recited against the defendant, he had also been found not guilty. . . .
>
> . . . [Townsend] was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand.

334 U.S. at 740-41. As another illustration of requisite due process in the sentencing, *United States v. Tucker*, 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972), involved a noncapital charge of armed robbery. Relying on in-court sentencing information from an FBI agent concerning Tucker's prior but constitutionally invalid convictions, the sentencing judge gave explicit attention to the unconstitutional convictions in determining the sentence for Tucker. In affirming the circuit court's order to resentence Tucker, the Supreme Court noted:

> It is surely true . . . that a trial judge . . . generally has

wide discretion in determining what sentence to impose. It is also true that before making that determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come. . . .

But these general propositions do not decide the case before us. For we deal here, not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude. . . . The record in the present case makes evident that the sentencing judge gave specific consideration to the respondent's previous convictions before imposing sentence upon him. Yet it is now clear that two of those convictions were wholly unconstitutional . . . .

404 U.S. at 446-47. Cf. *Roberts v. United States*, 445 U.S. 552, 100 S. Ct. 1358, 63 L. Ed. 2d 622 (1980) (essentially undisputed facts do not constitute misinformation affecting a sentence). From the foregoing U.S. Supreme Court decisions, one gleans that a convicted defendant, even in a noncapital case, has a due process right to inquire into an incorrect assumption by the sentencing judge, untrue information materially affecting a prospective sentence, or other misinformation which a court may use in determining what sentence will be imposed.

This court has recognized the necessity of due process in sentencing a defendant. In *State v. Rose*, 183 Neb. 809, 164 N.W.2d 646 (1969), which involved a burglary conviction, this court remarked:

> The rules governing due process with respect to the admissibility of evidence are not the same in a presentence hearing as in a trial in which guilt or innocence is the issue. The latitude allowed a sentencing judge at a presentence hearing to determine the nature and length of punishment, other than in recidivist cases, is almost without limitation as long as it is relevant to the issue.

183 Neb. at 811, 164 N.W.2d at 648-49.

The requirement of relevant information for sentencing was reaffirmed in *State v. Porter*, 209 Neb. 722, 723-24, 310 N.W.2d 926, 927 (1981): "We have gone so far as to say that the

latitude allowed a sentencing judge in such instances is almost without limitation as long as it is relevant to the issue." See, also, *State v. Goodpasture*, 215 Neb. 341, 338 N.W.2d 446 (1983).

Two Nebraska statutes, pertaining to a defendant's right of allocution, are germane to the sentencing process: "Before the sentence is pronounced, the defendant must be informed by the court of the verdict of the jury, and asked whether he has anything to say why judgment should not be passed against him," Neb. Rev. Stat. § 29-2201 (Reissue 1985); and "If the defendant has nothing to say, or if he shows no good and sufficient cause why judgment should not be pronounced, the court shall proceed to pronounce judgment as provided by law," Neb. Rev. Stat. § 29-2202 (Reissue 1985). As one commentator has observed: "Today the most practical rationale underlying allocution is that it provides an opportunity for the offender and defense counsel to contest any disputed factual basis for the sentence . . . ." A. Campbell, Law of Sentencing § 72 at 232 (1978).

A convicted defendant must be afforded more than a mere opportunity to express an attitude, disposition, or view toward a prospective sentence. Consequently, if only constitutionally acceptable and relevant information may be the basis for a judge's determination concerning an appropriate sentence to be imposed, a defendant must be afforded a forum and the right to question the constitutional propriety of the information utilized by the sentencing judge, to present countervailing information, and to test, question, or refute the relevance of information on which the judge may rely in determining the sentence to be imposed. Without a hearing at which a defendant may exercise those rights, the sentencing process deteriorates into illusory due process.

If any court, as a matter of policy or rule, does not provide a convicted defendant with a sentence hearing to achieve due process and assure relevant information as the basis for sentencing, we exhort that court to incorporate a sentence hearing into the process for imposition of a sentence.

AFFIRMED.