STATE OF NEBRASKA, APPELLEE, V. SIDNEY E. VANN, APPELLANT.
432 N.W.2d 810

Filed December 16, 1988.  No. 87-806.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Sidney E. Vann, pro se.

Robert M. Spire, Attorney General, and Elaine A. Catlin for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

On July 17, 1986, defendant-appellant, Sidney E. Vann, was charged by information in the district court for Douglas County with possession with intent to deliver a controlled substance in violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1985). On July 10, 1987, this information was amended to include a habitual criminal charge, pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 1985). The defendant filed an amended motion to suppress physical evidence. This motion was denied after a suppression hearing was held on June 26, 1987. A jury trial was held on July 13 to 17, 1987. The jury found defendant guilty. After a habitual criminal hearing, defendant was sentenced to serve a term of 15 to 25 years in the Nebraska Penal and Correctional Complex. Defendant timely appealed to this court. Defendant's counsel assigns a single error: that the court erred in overruling defendant's motion to suppress physical evidence. Defendant has filed pro se briefs assigning other errors which will be discussed hereinafter. We affirm.

On June 25, 1986, the manager of a Residence Inn hotel in Omaha called the Omaha police narcotics unit to inform the police that a resident of the hotel, Sidney Vann, was acting in an unusual manner in that he was paying his bill in cash and the hotel was having a hard time collecting the bill; in that Vann requested his room not be cleaned by the hotel's personnel; in that many long-distance telephone calls were being made, particularly to California; and in that Vann left his room and returned at unusual hours, including visits to the hotel registration desk at 3 or 4 a.m. On June 30, 1986, the manager requested Vann to leave the hotel. Vann's final bill was paid in cash after he had been locked out of his room to effect payment. At trial, the manager identified Vann as the defendant herein.

The manager's call to the police narcotics unit was noted in police records, but no actual investigation was made until July 1, 1986, because of then-pending, ongoing narcotics investigations in other unrelated cases. On July 1, narcotics investigators went to the Residence Inn.

On July 2, 1986, the owners of M3 Video, a videocassette

movie rental store in Omaha, reported to a police officer, whose assignment was to investigate theft cases, that a person named Sidney Vann had rented six videocassette movies from M3 Video on June 23, 1986, that he had not returned the cassettes by June 30, and that those cassettes had a value of $360. The M3 Video owners informed the police theft investigator that Vann had furnished M3 with nonexistent and fraudulent addresses and telephone numbers, but that M3 had traced Vann to the Residence Inn in Omaha.

On July 1, while the narcotics officers were at the Residence Inn, they were informed that while hotel employees were cleaning Vann's room after he was evicted, a tray with a white residue had been found. This tray and residue were disposed of by the hotel prior to police arrival. Residence Inn employees provided the narcotics officers with a description of Vann's vehicle and with its California license number.

On July 2, 1986, the police narcotics officers located Vann's vehicle at the Omaha Best Western Airport Inn and placed the car under surveillance. The manager of the Airport Inn informed the officers that Vann and his wife were living in room 206. The officers requested that any trash removed from room 206 be saved for investigation. Pursuant to this request, hotel employees provided officers with trash from room 206. This trash was taken to police headquarters and examined. Some of the trash was considered to have evidentiary value, was logged into the police property unit, and was later forwarded to a chemist for examination.

During this same time period, the theft investigation officer followed up on the M3 Video theft. Using information furnished to him by the owners of M3 Video, the theft investigation officer went to the Residence Inn on July 2, 1986, and was informed by the Residence Inn that Vann had been "evicted" and that the Residence Inn had called the police narcotics unit. The theft investigation officer contacted the narcotics unit and was informed by the narcotics officers that Vann had been located at the Airport Inn. Officers of the two units consulted together about the suspect Vann, who was being investigated by each unit.

On July 3, 1986, the theft investigation officer obtained a

felony arrest warrant for Vann for the videocassette theft. The officer from the theft investigation unit informed officers from the narcotics unit about the warrant, and at approximately 9:50 a.m. on July 3, 1986, officers from both units went to the Airport Inn to arrest Vann.

Officers knocked on the door of room 206. A party who identified himself as Sidney Vann answered the door. Vann was dressed only in his underwear. He allowed the officers into the room, and a majority of the eight officers entered the room. This group consisted of nonuniformed officers from both the theft investigation unit and the narcotics unit, and two uniformed field officers. The arrest warrant was read to Vann, and then the officers asked Vann if they could search the room. Vann refused. While Vann dressed, Officer Mackevicius of the police theft investigation unit saw a "cellophane baggy with a white powdery substance sitting on top of the coffee table . . . ." Officer Mackevicius brought this bag to the attention of one of the narcotics officers. Vann and his wife, who was also in the room, were then taken to central police headquarters. A narcotics officer was left to secure the room. The officer testified that neither he nor any other officer searched the room at this time. Narcotics officers were sent to obtain a search warrant for the room and Vann's car.

At approximately 1:40 p.m., the officers from the narcotics unit returned to room 206 with a search warrant. A search of the room and Vann's car was then conducted by the narcotics officers. This search produced physical evidence used at the trial.

We first consider the assignment of error in defendant's counsel's brief, that is, that the trial court erred in overruling defendant's motion to suppress. In reviewing a trial court's ruling after a suppression hearing, this court does not reweigh the evidence or resolve conflicts in the evidence. At a hearing to suppress evidence, the court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given to their testimony and other evidence. The Supreme Court will uphold the trial court's findings of fact in a suppression hearing unless those findings are clearly wrong. *State v. Marco, ante* p. 355, 432 N.W.2d 1 (1988).

Defendant's underlying contention is that his arrest for theft was only a pretext to a search for evidence of violation of various Nebraska narcotics laws. Defendant contends that an arrest based on a pretext is illegal per se and that evidence obtained as a result of such a pretextual arrest must be suppressed.

We agree fully with the statement, relied on by defendant, set out in *United States v. Lefkowitz*, 285 U.S. 452, 467, 52 S. Ct. 420, 76 L. Ed. 877 (1932), that "[a]n arrest may not be used as a pretext to search for evidence." That proposition has been widely accepted in various courts across the nation. See *Warren v. City of Lincoln, Neb.*, 816 F.2d 1254 (8th Cir. 1987), *reh'g en banc granted* 825 F.2d 176, and cases cited therein. We have no general disagreement with the statement in *Warren*, 816 F.2d at 1257: "An arrest ostensibly for one purpose but in reality for the primary purpose of furthering an ulterior goal is unreasonable under the fourth and fourteenth amendments [to the U.S. Constitution]." It is necessary, of course, to determine what is a "pretextual arrest" before the statement quoted may be said to have validity.

Defendant relies, in large part, on lengthy quotations from an article by Burkoff, *The Pretext Search Doctrine, Now You See It, Now You Don't*, 17 U. Mich. J.L. Ref. 523 (1984). In that article, a pretext arrest is referred to as one "where the arresting officer was in fact making the arrest to search the arrestee incident to arrest for a reason which was legally insufficient to support the arrest." *Id.*

The word "pretext" is defined in Webster's Third New International Dictionary, Unabridged 1797 (1981), as "a purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs."

In *Taglavore v. United States*, 291 F.2d 262, 265 (9th Cir. 1961), the court determined that a pretext arrest was one "[w]here the arrest is only a sham or a front being used as an excuse for making a search . . . ."

In interpreting the phrase, we hold that the determination of whether an arrest is pretextual is a question of fact for the trial court. This court will not reverse a trial court's finding on this question unless the finding is clearly erroneous. See *U.S. v.*

*Portwood*, 857 F.2d 1221 (8th Cir. 1988).

Viewing the situation before the court in this case, it is clear that defendant's arrest was not pretextual. Defendant's contention that the arrest was a pretext would lead to the conclusion that various departments of law enforcement authorities could not cooperate with one another in the discharge of their duties. In this case, there was clear evidence before the theft investigation unit of the Omaha Police Division that defendant Vann had committed a Class IV felony, in that he had stolen $360 worth of videotapes. At the same time, there were strong indications known to narcotics investigators of the Omaha police that defendant Vann was violating the narcotics laws of this State.

When the two units of police became aware of the fact that one person was the subject of two investigations, it would offend all notions of efficiency, commonsense, and orderly procedures if the two units did not cooperate fully.

Defendant was legally arrested on a properly issued felony warrant on charges of felony theft. At the time of his legal arrest, officers of both police units saw a cellophane baggie containing a white powder in plain view at the scene of the arrest. Defendant refused to permit a search of his room under those circumstances. His request was honored and a proper search warrant obtained before any search was undertaken.

Later, a theft charge was filed and was proceeding toward trial, in a case separate and distinct from defendant's narcotics case, until defendant absented himself from the jurisdiction where the cases were pending. When defendant returned to the jurisdiction, the narcotics case was first tried, and after conviction in that case, the theft case was dismissed. The theft charge, on which defendant's arrest was based, was obviously not a sham. The officers had reasonable grounds to proceed on the felony theft alone.

The evidence before the trial court was overwhelming that defendant's arrest in this case was not pretextual, and we affirm the trial court's action in refusing to grant defendant's motion to suppress.

We make the foregoing analysis with full knowledge of the fact that defendant did not object, at trial, to receipt of the

physical items which were the subject of defendant's motion to suppress. Such failure, on defendant's part, to object at trial furnishes an independent ground of affirmance. *State v. Carter*, 226 Neb. 636, 413 N.W.2d 901 (1987).

We have also reviewed the record with regard to errors raised by defendant in two pro se briefs filed in this case. The errors are either without merit or are answered by the foregoing discussion.

The judgment of the trial court is affirmed.

AFFIRMED.

WHITE, J., concurs.