STATE OF NEBRASKA, APPELLEE, v. SIDNEY E. VANN, APPELLANT.
519 N.W.2d 568

Filed July 12, 1994.   No. A-93-853.

Sidney E. Vann, pro se.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

IRWIN, MILLER-LERMAN, and MUES, Judges.

MILLER-LERMAN, Judge.

Sidney E. Vann appeals the order of the district court denying without hearing his motion for postconviction relief filed pursuant to Neb. Rev. Stat. § 29-3001 et seq. (Reissue 1989 & Supp. 1993). As the basis for postconviction relief, Vann claims that he was denied effective assistance of counsel at both the trial and appellate levels in connection with his rights to be free from unreasonable searches and seizures as guaranteed under the Fourth Amendment to the U.S. Constitution and art. I, § 7, of the Nebraska Constitution. For the reasons recited below, we affirm.

## GENERAL LEGAL PRINCIPLES

On appeal from a proceeding for postconviction relief, the trial court's findings will be upheld unless such findings are clearly erroneous. *State v. Livingston*, 244 Neb. 757, 509 N.W.2d 205 (1993); *State v. Johnson*, 243 Neb. 758, 502 N.W.2d 477 (1993). "A motion for postconviction relief cannot be used to secure review of issues *which were or could have been litigated* on direct appeal, no matter how those issues may be

phrased or rephrased." (Emphasis in original.) *State v. Stewart*, 242 Neb. 712, 717, 496 N.W.2d 524, 527 (1993). Accord *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991).

The Nebraska Supreme Court has held that a defendant moving for postconviction relief must allege facts in the motion which, if proved, "constitute a denial or violation of his or her rights under the Nebraska or federal Constitution." *State v. Sims*, 244 Neb. 771, 772, 509 N.W.2d 6, 8 (1993). Accord *State v. Russell*, 239 Neb. 979, 479 N.W.2d 798 (1992). "The Nebraska Postconviction Act applies only where a prisoner has sustained such a denial or infringement of constitutional rights that the judgment is void or voidable." *State v. Sims*, 244 Neb. at 772, 509 N.W.2d at 8. "[A]n evidentiary hearing on a motion for postconviction relief may properly be denied when the records and files of the case affirmatively establish that the defendant is not entitled to relief." *State v. Victor*, 242 Neb. 306, 309, 494 N.W.2d 565, 569 (1993).

A motion for postconviction relief cannot be used as a substitute for an appeal or to secure a further review of issues already litigated on direct appeal or which were known to the defendant and counsel at the time of trial and which were capable of being raised, but were not raised, in the defendant's direct appeal. *State v. Wickline*, 241 Neb. 488, 488 N.W.2d 581 (1992); *State v. Whitmore* 238 Neb. 125, 469 N.W.2d 527 (1991).

In connection with a claim of ineffective assistance of counsel, the Nebraska Supreme Court has stated:

> [I]n order to state a claim of ineffective assistance of counsel as violative of the Sixth Amendment to the U.S. Constitution and thereby obtain reversal of a conviction, one must show that counsel's performance was deficient and such deficient performance prejudiced one's defense, that is, demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

*State v. Bowen*, 244 Neb. 204, 214, 505 N.W.2d 682, 689 (1993). Accord, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993); *State v. Victor, supra.*

## FACTS

The relevant facts as summarized by the Nebraska Supreme Court in Vann's direct appeal are as follows:

On June 25, 1986, the manager of a Residence Inn hotel in Omaha called the Omaha police narcotics unit to inform the police that a resident of the hotel, Sidney Vann, was acting in an unusual manner in that he was paying his bill in cash and the hotel was having a hard time collecting the bill; in that Vann requested his room not be cleaned by the hotel's personnel; in that many long-distance telephone calls were being made, particularly to California; and in that Vann left his room and returned at unusual hours, including visits to the hotel registration desk at 3 or 4 a.m. On June 30, 1986, the manager requested Vann to leave the hotel. Vann's final bill was paid in cash after he had been locked out of his room to effect payment. At trial, the manager identified Vann as the defendant herein.

The manager's call to the police narcotics unit was noted in police records, but no actual investigation was made until July 1, 1986, because of then-pending, ongoing narcotics investigations in other unrelated cases. On July 1, narcotics investigators went to the Residence Inn.

On July 2, 1986, the owners of M3 Video, a video-cassette movie rental store in Omaha, reported to a police officer, whose assignment was to investigate theft cases, that a person named Sidney Vann had rented six videocassette movies from M3 Video on June 23, 1986, that he had not returned the cassettes by June 30, and that those cassettes had a value of $360. The M3 Video owners informed the police theft investigator that Vann had furnished M3 with nonexistent and fraudulent addresses and telephone numbers, but that M3 had traced Vann to the Residence Inn in Omaha.

On July 1, while the narcotics officers were at the Residence Inn, they were informed that while hotel employees were cleaning Vann's room after he was evicted, a tray with a white residue had been found. This tray and residue were disposed of by the hotel prior to police

arrival. Residence Inn employees provided the narcotics officers with a description of Vann's vehicle and with its California license number.

On July 2, 1986, the police narcotics officers located Vann's vehicle at the Omaha Best Western Airport Inn and placed the car under surveillance. The manager of the Airport Inn informed the officers that Vann and his wife were living in room 206. The officers requested that any trash removed from room 206 be saved for investigation. Pursuant to this request, hotel employees provided officers with trash from room 206. This trash was taken to police headquarters and examined. Some of the trash was considered to have evidentiary value, was logged into the police property unit, and was later forwarded to a chemist for examination.

During this same time period, the theft investigation officer followed up on the M3 Video theft. Using information furnished to him by the owners of M3 Video, the theft investigation officer went to the Residence Inn on July 2, 1986, and was informed by the Residence Inn that Vann had been "evicted" and that the Residence Inn had called the police narcotics unit. The theft investigation officer contacted the narcotics unit and was informed by the narcotics officers that Vann had been located at the Airport Inn. Officers of the two units consulted together about the suspect Vann, who was being investigated by each unit.

On July 3, 1986, the theft investigation officer obtained a felony arrest warrant for Vann for the videocassette theft. The officer from the theft investigation unit informed officers from the narcotics unit about the warrant, and at approximately 9:50 a.m. on July 3, 1986, officers from both units went to the Airport Inn to arrest Vann.

Officers knocked on the door of room 206. A party who identified himself as Sidney Vann answered the door. Vann was dressed only in his underwear. He allowed the officers into the room, and a majority of the eight officers entered the room. This group consisted of nonuniformed

officers from both the theft investigation unit and the narcotics unit, and two uniformed field officers. The arrest warrant was read to Vann, and then the officers asked Vann if they could search the room. Vann refused. While Vann dressed, Officer Mackevicius of the police theft investigation unit saw a "cellophane baggy with a white powdery substance sitting on top of the coffee table . . . ." Officer Mackevicius brought this bag to the attention of one of the narcotics officers. Vann and his wife, who was also in the room, were then taken to central police headquarters. A narcotics officer was left to secure the room. The officer testified that neither he nor any other officer searched the room at this time. Narcotics officers were sent to obtain a search warrant for the room and Vann's car.

At approximately 1:40 p.m., the officers from the narcotics unit returned to room 206 with a search warrant. A search of the room and Vann's car was then conducted by the narcotics officers. This search produced physical evidence used at the trial.

*State v. Vann*, 230 Neb. 601, 602-04, 432 N.W.2d 810, 812-13 (1988).

Vann was charged with possession with intent to deliver a controlled substance, and as a habitual criminal. He was represented by privately retained counsel at the preliminary hearing. Thereafter, he was represented by different lawyers from the Douglas County public defender's office at trial and on appeal. Prior to trial, Vann's counsel filed a motion to suppress in which it was claimed that the evidence seized at the Airport Inn "by the arresting officer" was the product of an illegal search and seizure. Two Omaha police officers appeared at the suppression hearing and were cross-examined by Vann's trial counsel. Vann did not call other witnesses or offer other evidence. The motion to suppress was denied. Vann's case was tried to a jury on July 13 through 17, 1987.

Vann was convicted by the jury of possession with intent to deliver a controlled substance in violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1985). Vann was found by the court to be a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221

(Reissue 1989). The trial court sentenced Vann to 15 to 25 years in the Nebraska Penal and Correctional Complex. Vann appealed directly to the Nebraska Supreme Court. On appeal, Vann's appointed counsel argued that Vann's initial arrest was pretextual and improper and that the trial court erroneously denied Vann's motion to suppress. Appearing pro se, Vann filed two separate appellate briefs raising numerous other claims. The Nebraska Supreme Court affirmed Vann's conviction. *State v. Vann, supra.* The Nebraska Supreme Court concluded that Vann's initial arrest was not pretextual, affirmed the trial court's denial of Vann's motion to suppress, and stated that "[t]he errors [raised by Vann in his two pro se appellate briefs] are either without merit or are answered by the [court's] foregoing discussion." *Id.* at 607, 432 N.W.2d at 814.

In January 1989, Vann filed a petition for writ of habeas corpus in the U.S. District Court for the District of Nebraska. His petition was denied on October 5, 1990. No certificate of probable cause was issued. See Vann v. Gunter, case No. CV89-L-45. On October 2, 1992, Vann filed a second petition for writ of habeas corpus. See *Vann v. Hopkins*, 829 F. Supp. 293 (D. Neb. 1993). This petition was dismissed with prejudice as to some claims and without prejudice as to two claims arguably raising counsel's effectiveness in connection with the presentation of Fourth Amendment issues at trial and on direct appeal. Vann's claims of ineffectiveness of counsel in connection with search and seizure issues and the claim of pretextual arrest as presented in his second petition for writ of habeas corpus were "dismissed without prejudice for failure to exhaust state remedies."

Vann then filed a motion for postconviction relief in the district court for Douglas County, claiming ineffective assistance of counsel at both the trial and appellate levels in presenting his Fourth Amendment claims to the state courts. After review of the motion and records, the district court denied Vann's motion for postconviction relief, appointment of counsel, and evidentiary hearing. Vann appeals the denial of his request for postconviction relief to this court.

## ANALYSIS

Vann claims he was denied effective assistance of counsel at both the trial and appellate levels. Specifically, he argues to this court that his counsel failed to argue that the search of his motel room by motel employees and police was illegal, that counsel failed to raise the alleged requirement under Neb. Rev. Stat. § 28-511(3) (Reissue 1985) that the lessor mail a certified letter to the renter before complaining of theft, that the arrest was improper, and that counsel failed to investigate and present the full facts to the courts. The facts alleged to have been undeveloped are unspecified.

This court may take judicial notice of the record in the Nebraska Supreme Court of Vann's direct appeal. See, *State v. Stewart*, 242 Neb. 712, 496 N.W.2d 524 (1993) (where the Nebraska Supreme Court took judicial notice of actions filed in federal court); *First Nat. Bank v. Chadron Energy Corp.*, 236 Neb. 199, 459 N.W.2d 736 (1990) (indicating that in cases where the controversy has been previously considered and involves one of the parties currently before the court, the court may examine and take judicial notice of the records from the prior action). That record shows that on direct appeal, Vann's counsel assigned as error the trial court's failure to grant Vann's motion to suppress. Vann's appellate counsel contended that the arrest for theft was only a pretext to search for a suspected violation of narcotics laws. Appellate counsel's brief consists, in large part, of lengthy quotations from an article by John M. Burkoff, *The Pretext Search Doctrine: Now You See It, Now You Don't*, 17 U. Mich J.L. Ref. 523 (1984), and various treatises on criminal law.

The Nebraska Supreme Court on direct appeal concluded that the arrest for theft was not pretextual and that in making a proper arrest, the arresting officers observed a baggie containing a white powder in plain view. This observation, inter alia, provided a sufficient basis for obtaining the search warrant. The Nebraska Supreme Court affirmed the denial of Vann's motion to suppress. *State v. Vann*, 230 Neb. 601, 432 N.W.2d 810 (1988).

The record on direct appeal shows that Vann filed two pro se briefs in addition to that of his appellate counsel. The

introductory language in Vann's typed pro se brief, filed February 23, 1988, states:

> COMES NOW SIDNEY E. VANN, Appellant in the above-captioned cause and appearing Pro Se, to present to the Court his Supplemental Brief in answer and response to the Assignment of Errors previously filed with the Court. *Said brief is also filed as a result of appellant's attorney's failure to include in his brief, filed December 21, 1987, pertinent issues and errors material and important to this case.* Appellant prays that, upon an investigation and finding by the Court of the unconstitutionality of appellant's conviction, that said conviction will be overturned and sentence set aside, in accordance with law.
>
> *WHEREFORE, appellant brings forth the following facts material to his case* and presents them as unconstitutional under the law and Constitution of the State of Nebraska and the Constitution of the United States . . . .

(Emphasis supplied.) Second pro se brief for appellant on direct appeal at 1.

In his second pro se brief filed on direct appeal, Vann argued to the Nebraska Supreme Court, inter alia, that "he was denied due process of law by both the police and [the manager of the Airport Inn]" because of their unauthorized searches and seizures; that his "arrest is further proved pretextual in that it did not and does not meet the requirement of the Nebraska Revised Statutes, Sec. 28-511, Reissue 1985, defining the offense of Theft by Unlawful Taking or Disposition"; and that "appellant's constitutional rights have been violated from his arrest all the way through to his illegal conviction." Second pro se brief for appellant on direct appeal at 1-4. We note that the foregoing introductory language and errors assigned by Vann appearing pro se on direct appeal are the same issues which he now argues to this court were treated ineffectively by his counsel.

Vann contends before this court that he was denied effective assistance of counsel at trial and on appeal. The record shows that on direct appeal, Vann filed pro se briefs alleging numerous

errors at trial. Although Vann did not use the expression "ineffective assistance of counsel" in his pro se direct appeal briefs, many of the improprieties about which he complained were impliedly deficiencies in trial counsel's performance, not legal errors committed by the court.

In *State v. Falkner*, 224 Neb. 490, 398 N.W.2d 708 (1987), the Nebraska Supreme Court considered a postconviction case in which the defendant had appeared pro se as cocounsel with appellate counsel in his direct appeal. In *Falkner*, the defendant appealed from the judgment of the district court denying his motion for postconviction relief. Appearing pro se in his postconviction appeal, Falkner complained of two separate acts of ineffectiveness of trial counsel. Falkner claimed that trial counsel had performed deficiently by failing to challenge the racial composition of the jury venire panel and by failing to effectively cross-examine the State's witnesses. In ruling on the postconviction appeal, the *Falkner* court noted that

[i]neffectiveness of counsel was considered by this court in defendant's direct appeal, in which he appeared pro se and was also represented by counsel. *State v. Falkner*, 218 Neb. 896, 360 N.W.2d 482 (1984). This court has consistently held that the Postconviction Act cannot be used as a substitute for appeal or as a further review of issues already litigated. [Citations omitted.]

In raising the question of ineffectiveness of counsel on direct appeal, as he did, defendant could have litigated the questions of alleged failure of counsel to challenge the racial composition of the trial jury and the claimed ineffective cross-examination of the State's witnesses. A motion for postconviction relief may not raise questions which were or could have been raised on direct appeal.

224 Neb. at 491, 398 N.W.2d at 709-10. Based on the rationale that Falkner appearing pro se on appeal could have litigated ineffective assistance of counsel issues on direct appeal, the Nebraska Supreme Court affirmed the denial of Falkner's postconviction claim of ineffectiveness of trial counsel. *State v. Falkner*, 224 Neb. 490, 398 N.W.2d 708 (1987).

The record in this case shows that Vann appeared pro se and with counsel on direct appeal, where he complained of various

events related to his trial. Although he did not allege "ineffective assistance of counsel" per se, a reading of his appellate briefs implies a lack of diligence by trial counsel. Most, if not all, of the issues about which he complains in this postconviction action were brought to the attention of the Nebraska Supreme Court on direct appeal. Under the rationale of *Falkner*, we conclude that Vann raised, or could have raised, on direct appeal the questions regarding trial counsel's performance presented by this postconviction action. "A motion for postconviction relief cannot be used to secure review of issues *which were or could have been litigated* on direct appeal, no matter how those issues may be phrased or rephrased." (Emphasis in original.) *State v. Stewart*, 242 Neb 712, 717, 496 N.W.2d 524, 527 (1993). We, therefore, find Vann's claims regarding trial counsel's effectiveness to be without merit.

In connection with Vann's postconviction complaint that appellate counsel's performance was deficient, the record shows that Vann explicitly found that performance to be inadequate at the time of the direct appeal and undertook to remedy the situation by appearing pro se on appeal. In the introductory matter of his second pro se direct appeal brief, Vann states that he is filing his pro se appellate brief

> to present to the Court his Supplemental Brief in answer and response to the Assignment of Errors previously filed with the Court [by appellate counsel]. Said brief is also filed as a result of appellant's attorney's failure to include in his brief, filed December 21, 1987, pertinent issues and errors material and important to this case.

Second pro se brief for appellant on direct appeal at 1. We read this language as a contemporaneous criticism by Vann of his appellate counsel's effectiveness.

In *Kitt v. Clarke*, 931 F.2d 1246 (8th Cir. 1991), the U.S. Court of Appeals for the Eighth Circuit considered the appeal of the denial of a petition for a writ of habeas corpus in which the defendant filed two pro se briefs in his direct state appeal in addition to the brief filed by his appointed appellate attorney. The Eighth Circuit panel noted that the defendant raised 24 issues in addition to the insufficient evidence claim argued by

appellate counsel. The Eighth Circuit panel concluded, inter alia, that no reversible trial errors had been demonstrated and that the defendant had not been denied effective assistance of counsel at trial.

In considering the defendant's additional claim of ineffectiveness of appellate counsel, the Eighth Circuit panel in *Kitt* noted that since the defendant's claims of ineffective assistance of counsel at the trial level were without merit, "appellate counsel's failure to raise these arguments on appeal was probably not deficient performance and therefore could not have prejudiced [defendant]." *Id.* at 1250. The Eighth Circuit panel continued, "[f]urthermore, [defendant] raised the issue of trial counsel's effectiveness in his pro se supplemental briefs on direct appeal. Therefore, appellate counsel's refusal to raise the issue did not result in loss of appellate review and certainly did not constitute ineffective assistance of counsel." *Id.* We agree with the rationale expressed in *Kitt*. We conclude, based on the record in this case, that where a defendant appears pro se on direct appeal in addition to appellate counsel and explicitly undertakes to remedy appellate counsel's perceived ineffectiveness by identifying and arguing additional appellate issues, the defendant has not suffered the "loss of appellate review" and cannot later, on postconviction review, successfully complain of ineffective appellate representation. This conclusion is valid where the additional issues raised on direct appeal by defendant pro se impliedly include claims of ineffective assistance of trial and appellate counsel and trial errors.

In reaching the foregoing conclusion, we are aware of *Lilly v. Gilmore*, 988 F.2d 783 (7th Cir. 1993), in which the U.S. Court of Appeals for the Seventh Circuit approved the federal district court's procedural decision to address a prisoner's federal habeas corpus petition claiming ineffective assistance of counsel because no Illinois court in a precedential case had found waiver from the failure of a prisoner to raise the ineffectiveness issue in his or her pro se supplemental brief filed because he or she was dissatisfied with appointed counsel's performance. We believe the pronouncements of the Nebraska Supreme Court in *State v. Falkner*, 224 Neb. 490, 398 N.W.2d

708 (1987), differ from the lacuna identified in Illinois jurisprudence referenced and relied upon in *Lilly*.

For the reasons recited above, based on the record before us, we conclude that the trial court's denial of Vann's postconviction motion was not clearly erroneous, and the ruling is, therefore, affirmed.

AFFIRMED.