Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/29/2019 09:07 AM CDT

State of Nebraska, appellee, v.
Gabriel Ralios, appellant.
___ N.W.2d ___

Filed January 4, 2019.    No. S-18-126.

1. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.
2. **Sentences: Appeal and Error.** Whether an appellate court is reviewing a sentence for its leniency or its excessiveness, a sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion.
3. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.
4. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.
5. **Criminal Law: Statutes: Legislature: Intent.** In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.
6. **Licenses and Permits: Revocation: Proof.** Proof of reinstatement of a suspended operator's license under Neb. Rev. Stat. § 60-4,108(2) (Supp. 2017) requires that a driver with a previously suspended license show that his or her license is no longer suspended *and* that his or her license validly and effectively allows the holder to operate a motor vehicle.
7. **Sentences: Appeal and Error.** When a trial court's sentence is within the statutory guidelines, the sentence will only be disturbed by an appellate court when an abuse of discretion is shown.
8. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or

record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime.

9. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Thurston County, JOHN E. SAMSON, Judge, on appeal thereto from the County Court for Thurston County, DOUGLAS L. LUEBE, Judge. Judgment of District Court affirmed.

Erika Y. Buenrostro, of Castrejon & Buenrostro, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, Nathan A. Liss, Derek Bral, Senior Certified Law Student, and, on brief, Sarah E. Marfisi.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FREUDENBERG, J.

## NATURE OF CASE

Pursuant to a plea agreement with the State, Gabriel Ralios pled guilty to operating a motor vehicle during a time of suspension, a Class III misdemeanor, and speeding. On November 2, 2017, the county court accepted Ralios' pleas and, after hearing argument on sentencing, the court sentenced him to 75 days in jail pursuant to Neb. Rev. Stat. § 60-4,108(2) (Supp. 2017). Ralios appealed his sentence to the district court sitting as an intermediate court of appeal, assigning that the county court erred in sentencing Ralios to 75 days in jail instead of a fine of $100 under § 60-4,108(2). The district court affirmed the county court's sentence. The central issue on appeal is whether Ralios showed "proof of reinstatement of his . . . suspended operator's license" under § 60-4,108(2).

## BACKGROUND

On July 4, 2017, a Thurston County deputy sheriff clocked Ralios' car traveling over 80 m.p.h. in a 60-m.p.h. zone. Upon stopping the vehicle, the deputy determined Ralios' license was suspended in the State of Missouri. He was charged with speeding and with operating a motor vehicle during a time of suspension.

On November 2, 2017, Ralios entered into a plea agreement. The State agreed to stand silent at sentencing in exchange for Ralios' pleas on both counts. The court accepted Ralios' pleas and proceeded immediately to sentencing.

During the sentencing hearing, Ralios presented a letter from the Missouri Driver License Bureau stating that Ralios was "not currently suspended or revoked in the state of Missouri" as of October 3, 2017. He argued that this letter was sufficient to establish that his license was reinstated and that therefore, the maximum punishment authorized by statute was a $100 fine under § 60-4,108(2). Ralios conceded, however, that he was not able to drive legally in Missouri at the time of sentencing.

Section 60-4,108(2) states in relevant part:

> [A]ny person so offending shall be guilty of a Class III misdemeanor, and the court may, as a part of the judgment of conviction, order such person not to operate any motor vehicle for any purpose for a period of one year from the date ordered by the court, *except that if the person at the time of sentencing shows proof of reinstatement of his or her suspended operator's license*, proof of issuance of a new license, or proof of return of the impounded license, *the person shall only be fined in an amount not to exceed one hundred dollars*.

(Emphasis supplied.) Under Neb. Rev. Stat. § 28-106 (Reissue 2016), a Class III misdemeanor is generally punishable by a maximum of 3 months' imprisonment, a fine of $500, or both, with no minimum.

The court concluded that Ralios did not present sufficient evidence to show that his license had been reinstated in

the State of Missouri. No evidence was presented to the court regarding Ralios' prior convictions at the sentencing hearing, but the county court considered Ralios' prior convictions for driving without an operator's license in Dodge County, Nebraska, which the court found on Nebraska's online trial court case management system, known as JUSTICE. Considering the prior convictions and the evidence presented, the county court sentenced Ralios to 75 days in jail.

Ralios appealed his sentence to the district court for Thurston County, and a hearing was held on January 10, 2018. Ralios argued that the sentence was not authorized by statute, because he had presented sufficient evidence to warrant the statutory sentence requiring a reduction to only a $100 fine, and the county court abused its discretion by imposing an excessive sentence of 75 days in jail. The State did not submit a brief or argue. The district court affirmed the judgment and sentence of the county court. Ralios appeals.

## ASSIGNMENTS OF ERROR

Ralios assigns that the district court erred in affirming the county court's sentence of 75 days in jail instead of a fine of $100 or less under § 60-4,108(2) and in abusing its discretion by ordering Ralios to serve an excessive sentence.

## STANDARD OF REVIEW

[1] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[1]

[2,3] Whether an appellate court is reviewing a sentence for its leniency or its excessiveness, a sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion.[2] A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are

---

[1] *State v. Thompson*, 294 Neb. 197, 881 N.W.2d 609 (2016).

[2] *State v. Fields*, 268 Neb. 850, 688 N.W.2d 878 (2004).

clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[3]

## ANALYSIS

Ralios asserts on appeal that the district court erred in affirming the county court's sentence of 75 days in jail instead of a fine of $100 or less under § 60-4,108(2) and in abusing its discretion by ordering Ralios to serve an excessive sentence. We first address the issue of the interpretation of § 60-4,108(2), with the issue regarding the excessiveness of his sentence to follow. There is no issue as to whether the evidence was sufficient to support Ralios' conviction of driving under suspension, because Ralios pled guilty to the offense and the propriety of his plea and conviction are not issues argued before this court on appeal.

### Interpretation of § 60-4,108(2)

In support of his first assignment, Ralios argues that he provided the trial court with sufficient "proof of reinstatement of his or her suspended operator's license" by submitting a letter from the Missouri Driver License Bureau stating that Ralios was "not currently suspended or revoked in the state of Missouri" as of October 3, 2017. The State contends that the letter did not meet the requirement set by the statute. We agree.

The language of § 60-4,108(2) at issue in this appeal is "*proof of reinstatement of his or her suspended operator's license*, proof of issuance of a new license, or proof of return of the impounded license." (Emphasis supplied.) Ralios argues—and the State concedes—that the function of this section is to mitigate a sentence for people who show proof of their reinstatement of their suspended operators' licenses. We determine in this appeal the meaning of "proof of reinstatement

---

[3] *Id.*

of his or her suspended operator's license" without expressing any opinion as to whether the statute prohibits jail time for defendants who provide such proof. The meaning of "proof of reinstatement of his or her suspended operator's license" is an issue of first impression for this court.

[4,5] The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[4] In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[5] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[6]

[6] We hold that "proof of reinstatement of [a] suspended operator's license" under Neb. Rev. Stat. § 60-4,108(2) requires that a driver with a previously suspended license show that his or her license is no longer suspended *and* that his or her license validly and effectively allows the holder to operate a motor vehicle. This comports with the plain meaning of "reinstate" as the restoration of the license to its previously effective state, and it is consistent with Neb. Rev. Stat. § 60-4,100.01 (Reissue 2010). Proof of "reinstatement" of an operator's license requires more than a mere showing of nonsuspension. Instead, proof of reinstatement involves proof that the individual holds an affirmatively issued license or permit to legally drive a motor vehicle.

We find no merit to Ralios' argument that the statute's plain language, read in pari materia with other definitional sections of Nebraska's operator's license laws, demonstrates that he is required only to show that he has his "privilege to drive," which he defines as the ability to obtain a license if he so chooses, "reinstated," in order to show "proof of reinstatement

---

4 *State v. Thompson, supra* note 1.

5 *Id.*

6 *Id.*

of his or her suspended operator's license."[7] He argues that the statute does not require that he be in possession of a valid tangible government issued license, because the definition of "operator's license" under Neb. Rev. Stat. § 60-474 (Cum. Supp. 2016) is much broader; a privilege to drive is, according to Ralios, the ability to obtain a license. Thus, he contends that his "operator's license" was automatically "reinstated" at the conclusion of his suspension.

Section 60-474 of the Motor Vehicle Operator's License Act[8] defines "[o]perator's or driver's license" as

[A]ny license or permit to operate a motor vehicle issued under the laws of this state, including:

(1) Any replacement license or instruction permit;

(2) *The privilege of any person to drive a motor vehicle whether such person holds a valid license*;

(3) Any nonresident's operating privilege which shall mean the privilege conferred upon a nonresident by the laws of this state pertaining to the operation of a motor vehicle in this state by such person or the use in this state of a vehicle owned by such person;

(4) An employment driving permit issued as provided by sections 60-4,129 and 60-4,130; and

(5) A medical hardship driving permit issued as provided by sections 60-4,130.01 and 60-4,130.02.

(Emphasis supplied.) Focusing on § 60-474(2) and the language "privilege . . . to drive a motor vehicle whether such person holds a valid license," Ralios argues that "operator's license" includes situations where no government agency has issued a license to an individual, but the individual has the legal right to obtain a license. He argues that this is the "privilege" that would fall within the scope of the definition of "operator's license." Because he provided proof that his

---

[7] Brief for appellant at 10.

[8] Neb. Rev. Stat. §§ 60-462 to 60-4,189 (Reissue 2010, Cum. Supp. 2016 & Supp. 2017).

license was no longer suspended in Missouri, he asserts that he effectively showed that his driving privilege, or "operator's license" under § 60-474, was "reinstated."

Ralios is incorrect that an "operator's license," for reinstatement purposes, includes the mere legal ability to obtain a driver's license. Looking at the act as a whole, the Legislature consistently uses the phrase "operator's license" in contexts where the term refers to an affirmatively issued license or permit to legally drive—not to the concept of potential privileges for unlicensed drivers. For example, § 60-484(1) states that "no resident of the State of Nebraska shall operate a motor vehicle upon the alleys or highways of this state until the person has obtained an operator's license for that purpose." Section 60-488(2)(a) of the act extends driving privileges to non-residents so long as "[s]uch nonresident shall be duly licensed under the motor vehicle laws of the state of his or her residence . . . ." These provisions would make little sense if the term "operator's license" were strained to encompass persons who merely had the *option* to obtain a license or permit.

On the day of sentencing, Ralios conceded that he (1) was not able to drive in the State of Missouri legally at that time, (2) did not have a current driver's license, and (3) was told by the State of Missouri that he could obtain a new license but never obtained one. As evidence of proof of reinstatement, he provided only the clearance letter from Missouri. Because this letter did not affirmatively show that Ralios had a current valid operator's license in the State of Missouri, we find that it was insufficient to warrant the reduction of his sentence to a $100 fine under § 60-4,108(2).

EXCESSIVE SENTENCE

By determining that Ralios' clearance letter was insufficient to warrant the reduction of his sentence to a $100 fine under § 60-4,108(2), we now must determine whether the imposition of his 75-day jail sentence was excessive and thus an abuse of discretion by the lower court.

[7] When a trial court's sentence is within the statutory guidelines, the sentence will only be disturbed by an appellate court when an abuse of discretion is shown.[9] As § 60-4,108(2) states, a person who violates that section is guilty of a Class III misdemeanor. Under § 28-106, a Class III misdemeanor is generally punishable by a maximum of 3 months' imprisonment, a fine of $500, or both, with no minimum. Here, Ralios was sentenced to 75 days in jail, and his sentence was clearly within the statutory guidelines. Therefore, Ralios' sentence will only be disturbed if there was a judicial abuse of discretion by the sentencing court.

[8,9] Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[10] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime.[11] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[12] Generally, the sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence.[13]

---

[9] *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

[10] *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016).

[11] *State v. Huff, supra* note 9.

[12] *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

[13] *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011).

Ralios argues, first, that the sentencing court acted contrary to its role by considering Ralios' prior convictions and criminal history that the court independently found on Nebraska's online trial court case management system, known as JUSTICE. However, there is nothing in the record to show that the sentencing court's consideration of these materials were objected to below. A party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection.[14]

Second, Ralios argues that the court did not properly consider mitigating factors in imposing the 75-day jail sentence. Based on the record before us, the sentencing court did not consider any inappropriate or unreasonable factors in determining the sentence. We find that the court did not make its decision based upon reasons that are untenable or unreasonable, nor was its action clearly against justice or conscience, reason, and evidence.

## CONCLUSION

For the reasons set forth above, we affirm the district court's affirmance of the county court's sentence.

AFFIRMED.

---

[14] *State v. Cook*, 266 Neb. 465, 667 N.W.2d 201 (2003).