State of Nebraska, appellee, v. Carl A. Martin, appellant.

440 N.W.2d 676

Filed June 2, 1989.   No. 88-304.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Robert M. Spire, Attorney General, and Linda L. Willard for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and CARLSON, D.J.

CARLSON, D.J.

On September 4, 1987, an information was filed in the Lancaster County District Court charging the defendant-appellant, Carl A. Martin, with three counts of first degree sexual assault, under Neb. Rev. Stat. § 28-319(1)(a)

(Reissue 1985); two counts of using a knife to commit a felony, under Neb. Rev. Stat. § 28-1205(1) (Reissue 1985); and one count of robbery, under Neb. Rev. Stat. § 28-324(1) (Reissue 1985). Defendant pleaded not guilty to all charges, and the case was set for a jury trial. Motions to suppress statements and evidence were filed, which after a hearing the court overruled. A multiple-day jury trial was held, and the jury returned verdicts of guilty on each of the six counts.

The court ordered a presentence investigation and evaluations to determine whether the defendant was a mentally disordered sex offender. The defendant was adjudged to be a nontreatable mentally disordered sex offender and was then sentenced to indeterminate terms of incarceration as follows: $16 \frac{2}{3}$ to 50 years on each of the first degree sexual assault charges, $16 \frac{2}{3}$ to 50 years on the robbery charge, and $6 \frac{2}{3}$ to 20 years on each of the weapons charges. Each sentence was to be served consecutively. The defendant appealed to this court.

The defendant's assignments of error can be summarized as claiming: (1) The court erred in overruling defendant's motions to suppress statements and evidence; (2) the court erred in refusing to instruct the jury on the lesser-included offense of attempted first degree sexual assault on count III; (3) the court erred in refusing to instruct the jury on the lesser-included offense of theft on count V; (4) the court erred in overruling defendant's objection to instruction No. 11 in regard to the robbery count; (5) the court erred regarding the finding of serious personal injury based on the evidence in the three first degree sexual assault charges; and (6) the court erred and abused its discretion in imposing excessive and disproportionate sentences.

## THE FACTS

The background for the six counts is extensive, but we must examine some of the facts on each count to resolve the questions of error. In count I, the prosecutrix testified that in the late evening of July 21, 1987, as she was driving home in Lincoln, Nebraska, a man sat up in the back seat of her car and put his left arm around her shoulders and his right hand up to her neck. The defendant stated, "[D]on't move or I'll cut your

throat," and she said, "[P]lease don't hurt me." He told her he wanted money, and after driving for some time, she was directed to a parking lot of an elementary school. The defendant put a sweatshirt over her face, told her to remove her shoes, and tied her wrists together.

After they got out of the car, the defendant told her he wanted to have sex with her and to lie down. The defendant pulled up her shirt and rolled her over on her side. The prosecutrix asked the defendant not to have anal intercourse, and he said he would not. The defendant attempted to penetrate her anally with his finger, but she told him it hurt, so he stopped. The defendant subjected the prosecutrix to vaginal intercourse while she was still tied with her eyes covered. When they returned to her car, the defendant untied her wrists. They drove to another area where the defendant got out and returned $2 he had taken from her earlier.

The prosecutrix went to her boyfriend's apartment and told him what had happened. The police were called and she went to the hospital for an examination. The prosecutrix had marks on her wrists which caused her discomfort and a number of superficial abrasions on her back and buttocks. The doctor who examined her testified that she did not have any injury or trauma to her vaginal area.

The prosecutrix in count II testified that on July 29, 1987, at 14th and Garfield Streets in Lincoln, Nebraska, at about 10:30 p.m., she was returning to her car after a trip to Omaha. The defendant approached the car and asked for a ride to Malone Community Center, to which she agreed. When they arrived at the center, the defendant attempted to give her money and then directed the prosecutrix into a nearby alley. The prosecutrix tried to leave the alley but the defendant stopped her. The defendant then forced her out of the car, and she screamed for help. The defendant pushed her to her knees and began to choke her. The defendant told her to remove her clothes, ripped the shirt she had been wearing, and blindfolded her with it. He then told her to lie down on the ground. He removed his clothing and lay down on top of her. He directed her to rub his penis until he had an erection, and he attempted unsuccessfully to penetrate her vagina with his penis frontally and from the

rear. He led her to another area and was successful in penetrating her vagina with his penis.

After these acts, he tied her wrists with a nightgown and had her lie down in the back seat of the car. The defendant drove to 16th and South Streets, told her to count to 25, and left.

At trial the prosecutrix testified that as a result of the assault she received abrasions on her back and bruises on her legs. There was no trauma noted on the pelvic examination. As to the choking, the victim testified she could not breathe, she was gasping for air, and she could not get air into her lungs. In response to questions, the victim testified, "I could picture myself . . . like being found, like dead somewhere, with my parents having to come find me and seeing myself dead and not believing that — not believing that it was happening," and, when counting, "I saw myself like getting up out of the back of the car and him still being there and him being there and ready to kill me."

In counts III and IV, a first degree sexual assault count and use of a knife to commit a felony count, the prosecutrix-victim went to a laundromat on the morning of August 7, 1987. Another woman had been present but, at some point, the victim was alone with the defendant, who came up behind her, grabbed her, put a knife to her throat, and threatened to use the knife if she moved. He took her into the bathroom, made her sit on the floor, and closed the door. The defendant told her to take off her clothes and tied her shirt over her eyes. He had her lie down on the floor. He spread her legs apart, lay down on top of her, and had sexual intercourse with her for 2 to 3 minutes. When he was done, he told her to count to 30 after he left.

After the prosecutrix heard the door close, she removed her blindfold and got dressed. The laundromat was empty, but just outside the door she spotted the woman who had been in there earlier. The victim told the woman she had been raped, and the woman, who later identified the defendant as the man in the laundromat, helped her contact the police and her husband. The emergency room doctor testified there was no trauma to the patient's vaginal area, but described the victim as being emotionally upset.

The robbery and use of a knife crimes, counts V and VI,

occurred an hour or so later that same day, August 7, 1987. At about 8:19 a.m., the victim left her home and went to take her car out of the garage. She placed her purse on top of the cardboard sunscreen which was sitting on the front passenger side floor. She started to put her keys in the ignition and shut her car door, but the door would not shut because a man was standing next to her with a knife.

The defendant told her to give him her purse. She was unable to speak or move, and the man told her again to give him her purse. She told him to take the purse, and the defendant, holding the knife in his right hand, reached over her with his left hand and took the purse. He pulled her out of the car and said he was going to tie her up. She told him not to tie her up because she had a job interview, and he did not. He took her keys and, as he left, he shut the garage door, leaving the keys on the ground. She ran into the house and called the police. The victim identified the defendant in court as the man who took her purse.

We proceed now to the defendant's arrest. At 10:30 a.m. on August 8, 1987, Officer Duckworth of the Lincoln Police Department contacted a woman regarding her complaint of an alleged indecent exposure incident which occurred between 9 and 9:30 that morning. She told Officer Duckworth that, as she was walking north on the east side of 13th Street, in the area of 13th and Peach Streets, she saw a man kneeling on the ground behind some bushes. She thought he was masturbating, but she could not see his penis and was unable to tell what he was doing. At some point, the man made a comment to her; he later stood up and waved to her. The police received another call stating a muscular black man was wandering around the same neighborhood. An investigation was commenced, with the help of other officers, in this area. Based on information gathered in the course of the canvass of the neighborhood, the officers were ultimately led to an apartment at 1320 Peach Street. The officers could hear noises coming from the apartment but could not get the occupant to open the door. The officers found some weightlifting trophies marked NSP (Nebraska State Penitentiary) on the front porch.

Officer Duckworth attempted to obtain search and arrest

warrants, while the other officers remained outside the apartment. He was unsuccessful in obtaining either warrant. After he returned to the apartment, the woman with whom the defendant was staying had come home. The police advised her they were looking for a man they believed to be in her apartment. She let the officers in and stated it was all right to search for him. Once inside the apartment, the officers found the defendant hiding in the attic and placed him under arrest for disturbing the peace. The defendant was taken to the Lincoln Police Department, after which police officers discovered that there was an active warrant for the defendant for failure to appear on a traffic citation.

After he was arrested, the defendant signed a consent to search form, agreed to provide hair and body fluid samples for a rape kit, was fingerprinted and photographed, and gave three *Miranda* statements. Consents were given by both the defendant and his girlfriend to search the premises. The search of the apartment revealed several items which linked the defendant to the sexual assaults. The defendant claims all of this evidence was the direct result of an illegal arrest.

## THE ARREST

The defendant's first assignment of error claims the trial court should have suppressed statements and evidence obtained incident to arrest. He claims his arrest was invalid because the police did not have probable cause to arrest him, based on the failure to obtain an arrest warrant when they requested one. Therefore, any evidence gathered as a result of the arrest is "fruit of the poisonous tree" and should have been excluded from the trial.

It is necessary to begin by establishing what evidence would be suppressed if the arrest was not valid. Only evidence obtained as a direct result of the arrest would be suppressed. Although the defendant argues to the contrary, the evidence taken as a result of the apartment search would not be suppressed. The defendant's girlfriend admitted the police to the apartment after having been informed of the circumstances. She voluntarily consented to the search of the apartment. The evidence indicates her name was the only name

on the mailbox at the apartment. She told police the defendant lived in the apartment only periodically. She had an equal right to occupy the premises, and her consent to search is sufficient to validate the search of the apartment. See *State v. Van Ackeren*, 200 Neb. 812, 265 N.W.2d 675 (1978). Therefore, if the arrest was invalid, the evidence which would be suppressed as a result would be any inculpatory statements the defendant made after the arrest, the body tissue and fluid samples, and results of the tests on the body tissue and fluid samples.

The State argues the outstanding warrant provided a sufficient basis to support defendant's arrest. It is clear that once the police had determined defendant's name, a check of police files would have revealed the outstanding warrant, which would have supplied a legal basis for the arrest. However, that is not what happened here. The police did not know of the outstanding warrant until after the defendant was already arrested. A warrantless arrest which occurs without probable cause cannot be made lawful by events which occur afterward. *Rios v. United States*, 364 U.S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 (1960). Thus, the fact that there was a warrant outstanding for the defendant's arrest will not make the arrest lawful, as this was not the basis for the arrest of the defendant.

Two arguments are made concerning the invalidity of the arrest.

First, the defendant claims the arrest was invalid because he was not arrested pursuant to a known arrest warrant. Neb. Rev. Stat. § 29-404.02 (Reissue 1985) specifies an arrest without a warrant may be made when a peace officer has reasonable cause to believe that a person has committed "(2) a misdemeanor, and the officer has reasonable cause to believe that such person . . . (a) will not be apprehended unless immediately arrested . . . ."

The circumstances of the arrest provide a solid basis for finding the police had a reasonable belief that if the defendant was not immediately arrested, he would not be apprehended. He asked a neighbor to tell police the neighbor had not seen the defendant that particular day. He hid in the apartment and refused to open the door or to identify himself. When the police entered the apartment with the girlfriend, the defendant hid in

the attic of the apartment, despite the apparent heat in the attic. When the police attempted to investigate the noises coming from the attic, the defendant stood on the door leading to the attic, barring the police's entry.

The Supreme Court will uphold the trial court's findings of fact on a motion to suppress unless they are clearly erroneous. *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989); *State v. Hoer*, 231 Neb. 336, 436 N.W.2d 179 (1989). In determining whether the findings are clearly erroneous, we do not reweigh the evidence or resolve conflicts in the evidence; rather, we recognize the trial court as the finder of fact and take into consideration that the trial court had the opportunity to observe the witnesses testifying in regard to the motion to suppress. *State v. Sardeson, supra; State v. Sutton*, 231 Neb. 30, 434 N.W.2d 689 (1989); *State v. Vann*, 230 Neb. 601, 432 N.W.2d 810 (1988). In this case, the judge presiding at the hearing specifically found:

> [T]he activities up to that point [when Martin came down from the attic] would give every indication that should he not be taken into custody, that he may well flee . . . and the court does find that there was reasonable cause to believe that Mr. Martin had committed a misdemeanor offense and that there was reasonable cause to believe that he might flee and not be apprehended unless he was arrested.

The record contains ample evidence to support this finding. The finding was not clearly erroneous.

Second, the defendant claims the arrest for disturbing the peace was a pretext to obtain information concerning several sexual assaults which had taken place in Lincoln in the previous months. In *State v. Vann, supra*, the Nebraska Supreme Court cited two definitions of the phrase "pretext arrest": (1) an arrest made for the purpose of conducting a search incident to arrest when there was a legally insufficient reason to support the arrest, citing Burkhoff, *The Pretext Search Doctrine, Now You See It, Now You Don't*, 17 U. Mich. J.L. Ref. 523 (1984); and (2) an arrest which is only a front or a sham used as an excuse for making a search, citing *Taglavore v. United States*, 291 F.2d 262 (9th Cir. 1961). The determination of whether an arrest is pretextual is a question of fact for the trial court. *State v. Vann,*

*supra.* This court will not reverse a trial court's finding on this question unless the finding is clearly erroneous. *Id.* Defendant's arrest does not fall within the definitions of a pretext arrest found in *Vann.* Clearly, there was a legally sufficient reason to support the arrest—a citizen complaint of disturbing the peace. Since there was a legally sufficient reason to arrest the defendant, the arrest cannot be said to be only a sham or a front to obtain information on the sexual assaults.

## LESSER-INCLUDED OFFENSES

The second and third assignments of error claim the trial court erred in not giving instructions on lesser-included offenses. The defendant requested an instruction on attempted first degree sexual assault in connection with the third count in the information and an instruction on theft in connection with the robbery count. Both requests were denied by the trial judge.

"When defendant requests the trial court to submit a lesser-included offense in the instructions, the trial court must submit all included offenses as to which the evidence is sufficient to support a verdict." (Syllabus of the court.) *State v. McClarity,* 180 Neb. 246, 142 N.W.2d 152 (1966).

" 'When the evidence entirely fails to show an offense of a less degree than that charged in the information it is not prejudicial error to omit to give an instruction defining an offense of such less degree.' " *State v. Tamburano,* 201 Neb. 703, 706-07, 271 N.W.2d 472, 474 (1978), quoting *Fager v. State,* 49 Neb. 439, 68 N.W. 611 (1896); *State v. Vicars,* 207 Neb. 325, 299 N.W.2d 421 (1980).

On the robbery count, the defendant argues that because the purse was taken from the car floor next to the victim, an instruction on the lesser-included crime of theft should have been given because the jury might have found the purse was not taken from the victim but rather from the victim's car. The only evidence presented concerning the robbery showed the defendant placed a knife at the victim's throat and asked for her purse. The purse was sitting on the floor of the car next to the victim. The victim was frightened and unable to move; therefore, she told the defendant to get the purse himself. For an act to be deemed robbery, it is not necessary that property be

taken from the person; it is sufficient if the property is taken from the individual's personal presence, protection, or control. *State v. Welchel*, 207 Neb. 337, 299 N.W.2d 155 (1980). There is no claim that any evidence indicated the purse was not taken from the victim's presence. Thus, there was no evidence that any crime other than robbery was committed in this instance. Therefore, the trial court did not err in refusing to give an instruction on the lesser-included offense of theft.

Concerning the claim that an instruction on the lesser-included offense of attempted first degree sexual assault should have been given on count III, the evidence offered in support of the instruction on the lesser charge is not sufficient to support an instruction on attempted first degree sexual assault. The defendant relies on two pieces of evidence to support the lesser-included charge: (1) statements made by Martin to the police following his arrest, and (2) his interpretation of laboratory tests. The issue is not whether the defendant had sexual intercourse with the victim; rather, the issue is whether the defendant achieved even the slightest penetration. See § 28-319. There is no evidence contradicting the victim's testimony that the defendant achieved penetration. Officer Sorensen testified that, following the arrest, defendant stated he did not "think" he had sex with the third victim because he does not have sex with women who are having their menstrual periods. The forensic serologist testified that the laboratory analysis of the semen stains could not eliminate the suspect (the defendant) as a possible semen donor. This evidence clearly does not contradict the proof in regard to the element of penetration. Therefore, the trial court did not err in refusing to instruct the jury on the lesser-included offense of attempted first degree sexual assault.

Both requests for instructions on lesser-included offenses are based on the contention that the jury might not believe the testimony of the State's witnesses. Where the State offers uncontroverted testimony on an essential element of a crime, mere speculation that the jury may disbelieve the testimony does not entitle the defendant to an instruction on a lesser-included offense. *State v. Narcisse,* 231 Neb. 805, 438 N.W.2d 743 (1989); *State v. Tamburano, supra.*

The fourth assignment of error complains the trial court should not have given instruction No. 11, concerning the charge of robbery. At the instruction conference, defense counsel objected to the instruction because it stated that it is not essential in a robbery for money or personal property of some value be taken from the *person* of the victim. This assignment of error is not discussed in the defendant's brief. Errors assigned but not discussed are not considered by this court. *In re Interest of P.M.C.*, 231 Neb. 701, 437 N.W.2d 786 (1989); *Bock v. Bank of Bellevue*, 230 Neb. 908, 434 N.W.2d 310 (1989). Further, no plain error exists with this instruction because it is a correct statement of the law. The taking of property in a robbery need not be from the "person." It is sufficient if it is taken from the individual's personal presence, protection, or control. *State v. Moreno*, 228 Neb. 210, 422 N.W.2d 56 (1988); *State v. Welchel, supra.* Therefore, no error was committed in giving the instruction.

## SERIOUS PERSONAL INJURY

As we have seen on counts I, II, and III of the information, the defendant was convicted of the offense of first degree sexual assault and received the maximum sentences. The defendant claims the district court erred in not specifically finding serious personal injury or, finding such injury, did so on insufficient grounds. The defendant cites the following statutes:

"Sexual assault in the first degree is a Class II felony. The sentencing judge shall consider whether the actor shall have caused *serious personal injury* to the victim in reaching his decision on the sentence." (Emphasis supplied.) § 28-319(2).

"Serious personal injury shall mean great bodily injury or disfigurement, *extreme mental anguish or mental trauma*, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." (Emphasis supplied.) Neb. Rev. Stat. § 28-318(4) (Reissue 1985). Based on these statutes, the defendant advances a theory that there must be a separate hearing to determine "serious personal injury" or that, at least in this case, there was insufficient evidence for such finding.

In support of the hearing concept, the defendant cites a Nebraska case and the Nebraska Constitution. See, *State v.*

*Country*, 194 Neb. 570, 234 N.W.2d 593 (1975); Neb. Const. art. I, § 23. In the *Country* case it was stated:

> The record before us discloses none of the details of the commission of the crime in question. It cannot be determined from the record before us whether or not serious personal injury, as that term is defined by L.B. 23, has occurred. This may in part, of course, be because of the nature of the plea entered.

> It seems to us that the provisions relating to the determination of punishment make it necessary that before a judge can, on a plea of guilty or nolo contendere, determine a sentence he must in some manner determine the fact and extent of the serious personal injury inflicted on the victim by the actor.

*State v. Country, supra* at 573, 234 N.W.2d at 595.

The defendant in the *Country* case entered a plea, and there was no trial or evidentiary hearing. The record was blank regarding the details of the crime. In this case, however, the court had received detailed descriptions from the victims of the assaults and descriptions by medical and law enforcement professionals, as well as by other witnesses, as to the emotional impact on the victims. Specific victim impact statements were also contained in the presentence report. Additionally, the court had observed the witnesses in their testimony, and any observations of emotional trauma could validly be used in determining the extent of serious personal injury to the victims. Therefore, an additional hearing to determine serious personal injury was not necessary.

This record is replete with observations by others of the mental trauma experienced by the victims immediately after the assaults. The presentence report contains letters from the victims as well as letters from members of the victims' families detailing the mental anguish and trauma suffered by the victims. The testimony of each victim was that she feared for her life and offered no resistance because of her fear.

The extreme mental anguish and trauma outlined in the facts described herein and at trial, by any criteria, could be found to equate to the "serious personal injury" requirement of the statute. Based on this analysis and the record, the defendant's

constitutional complaint of a lack of an adequate appeal record to scrutinize, on the issue of serious personal injury, is without merit.

A few more words in regard to the sentencing process. As we have pointed out, to state that sentencing is an important part of the criminal justice system is an expression of a truism. *State v. Barker*, 231 Neb. 430, 436 N.W.2d 520 (1989). As the U.S. Supreme Court observed in *Bradley v. United States*, 410 U.S. 605, 609, 93 S. Ct. 1151, 35 L. Ed. 2d 528 (1973), "The term 'prosecution' clearly imports a beginning and an end. . . . In the legal sense, a prosecution terminates only when sentence is imposed." In this regard, the Supreme Court has also stated:

> It is surely true . . . that a trial judge . . . generally has wide discretion in determining what sentence to impose. It is also true that before making that determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.

*United States v. Tucker*, 404 U.S. 443, 446-47, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). See, *State v. Rose*, 183 Neb. 809, 164 N.W.2d 646 (1969); *State v. Porter*, 209 Neb. 722, 310 N.W.2d 926 (1981).

This record reflects such an inquiry by the court, and its decision, in regard to the finding of serious personal injury on counts I, II, and III, comports with Nebraska law and the Nebraska and U.S. Constitutions.

## SENTENCES

The defendant claims his sentences were excessive and disproportionate to the severity of the offenses. He reasserts the argument that the sexual assaults did not cause serious personal injury and, surprisingly, that the robbery did not cause substantial pecuniary loss. The first contention has been previously answered, but the defendant advances the view that the sexual assault victims herein were not brutalized, and therefore the sentences are excessive or disproportionate. Cruelty, as we have seen, can be mental as well as physical. To suggest that there was no brutality in the first degree sexual assaults in this record shows a failure to comprehend that first

degree sexual assault in and of itself is a brutal crime. The pecuniary loss question does not merit discussion.

In a case cited by the defendant, we stated:

> In determining whether probation should be granted, and, if a sentence is to be imposed, its severity, there are many factors to be considered. The primary function of the criminal law is to protect individuals and society from the depredations of the criminally bent. In furtherance of this purpose, it is deemed necessary to mete out punishment as a deterrent to others and *to lock up incorrigible criminals.*

(Emphasis supplied.) *State v. Etchison*, 188 Neb. 134, 137, 195 N.W.2d 498, 501 (1972).

The defendant has a lengthy juvenile record beginning at the age of 13. A large amount of defendant's childhood was spent at the Youth Development Center at either Geneva or Kearney. Defendant's adult record indicates that he has been unable to spend more than a few months outside of prison walls without committing additional crimes. Defendant's criminal record includes prior felony convictions for rape, use of a knife to commit a felony, and theft. The court also had before it at sentencing two medical reports evaluating the defendant and finding him to be a nontreatable mentally disordered sex offender. These reports also include comments made by the defendant, whether exaggerated or not, admitting to numerous sexual assaults for which he was not charged.

In passing sentence, the court noted the emotional trauma, embarrassment, anguish, and fear experienced by the victims. The court also cited the defendant's long history of serious problems with the law. In pronouncing sentence, the court specifically stated:

> This defendant is a very dangerous individual. He presents a very serious risk to society and he must simply be separated from society in order to protect society. Defendant deserves and will receive the maximum sentence allowed by the law on all counts.

> Having regard for the nature and circumstances of these crimes and the history, character, and condition of this defendant, the Court finds that imprisonment of this defendant is necessary for the protection of the public

because lesser sentences than are to be imposed would depreciate the seriousness of these crimes and promote disrespect for the law.

The sentences given to the defendant are within the limits set out by the statutes for the offenses of which he was found guilty. The court adequately set out the reasons for the sentences given to the defendant. Additionally, the defendant has not shown any abuse of discretion on the part of the court in imposing sentence. In the absence of an abuse of discretion, a sentence imposed within statutory limits will not be disturbed on appeal. *State v. Barker*, 231 Neb. 430, 436 N.W.2d 520 (1989); *State v. Dillon*, 222 Neb. 131, 382 N.W.2d 353 (1986).

This court finding no error, the decision and sentences of the district court are affirmed.

AFFIRMED.