IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. NGUOT


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

DENG L. NGUOT, APPELLANT.


Filed March 5, 2019.    No. A-18-095.


Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Ann O. Hayden for appellant.

Douglas J. Peterson, Attorney General, and, on brief, Sarah E. Marfisi for appellee.


MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

MOORE, Chief Judge.

INTRODUCTION

Deng L. Nguot appeals his conviction and sentence in the district court for Douglas County following a jury trial for robbery, terroristic threats, and use of a deadly weapon, other than a firearm, to commit a felony. Nguot claims on appeal that the court erred in admitting certain evidence, overruling his motion for mistrial, and instructing the jury. He also asserts that the court imposed an excessive sentence. Finding no merit to Nguot's assigned errors, we affirm.

BACKGROUND

On May 11, 2017, the State filed an information in the district court, charging Nguot with robbery in violation of Neb. Rev. Stat. § 28-324 (Reissue 2016), a Class II felony, and terroristic threats in violation of Neb. Rev. Stat. § 28-311.01 (Reissue 2016), a Class IIIA felony. The State subsequently filed an amended information adding a third charge of use of a deadly weapon, other

- 1 -

than a firearm, to commit a felony in violation of Neb. Rev. Stat. § 28-1205(1)(b) (Reissue 2016), a Class II felony.

A jury trial was held November 13-15, 2017. The State offered testimony from law enforcement officers and personnel involved in the investigation in this case, the victim, and an associate of the victim. The State also offered various photographs, surveillance footage, and text message evidence that was received by the district court. Nguot did not testify, but he offered testimony from his girlfriend.

The charges against Nguot in this case arose from an incident that occurred in the parking lot of a banquet hall in Omaha, Nebraska, where the owner, Kokoui Gui Dosseh, sometimes hosts after-hours parties and fundraisers. The victim in this case, Koffi Amefia Koffie, is an associate of Dosseh's and manages the building for him. On the night of April 8, 2017, there was a fight during an event at the banquet hall, and Nguot, one of the participants in the fight, was ejected from the building. According to Dosseh, fighting results in a lifetime ban from his properties and events.

Dosseh's phone number is posted on the door to the banquet hall to allow people to call him directly if "anything happen[s] at the place." On April 9, 2017, when Dosseh was at home, he received a phone call from a number he did not recognize. According to Dosseh, the caller identified himself as "Deng something" and talked about "what really happened" the previous night. When the caller referred to "last night," Dosseh understood that he was referring "[t]o the fight" and "kicking him out." Dosseh asked the caller to send a picture of himself to Dosseh so Dosseh could "figure out who he is," and in response, Dosseh received a text message photograph of a man and a text stating "thay [sic] me." The record does not show whether Dosseh received the text message while still on the phone with the caller. At trial, Dosseh identified exhibits 1 and 2 as copies of the text message and photograph that he received, and he identified the man in the picture as Nguot. In the photograph, Nguot is wearing a white shirt with black lettering and appears to be sitting inside a reddish colored car. The text message reflects a time and date stamp of "Sun, Apr 9, 12:27 p.m." Dosseh was asked about the phone number reflected at the top of the text message and he testified that this was the number that called him, but he also testified, "That was the problem though, I think we was talking on the phone and I said, I know that number. And he was trying to say like he's got to send me a picture, I do not know that number." When the State offered exhibits 1 and 2, Nguot's attorney objected as follows, "Your Honor, I'd object on foundation, especially following the new testimony that the numbers from the phone call that he received and the phone call he received the photo did not match." The district court received exhibits 1 and 2 over Nguot's objection.

The banquet hall is equipped with a surveillance camera system that Dosseh is able to watch remotely. As Dosseh was speaking to the caller on the phone, he observed a person and "a red SUV" in the parking lot of the banquet hall via the remote access to his surveillance system. After Dosseh observed the person "walking out along the building" and approaching a car in the parking lot, he contacted Koffie, who was still at the banquet hall, and asked him "to step out and talk to him." Dosseh continued to monitor the surveillance system, and he observed Koffie running. Dosseh tried to call Koffie, but when Koffie did not respond, Dosseh called the police.

Koffie testified about the fight at the banquet hall on the evening of April 8, 2017, and at trial, he identified Nguot as having been one of the participants in the fight. Koffie spent the night of April 8 in the banquet hall and was still there the next day when Dosseh contacted him. After

receiving Dosseh's call, Koffie stepped outside the banquet hall and saw Nguot, whom he recognized from the night before. According to Koffie, Nguot was "going back and forth on [sic] the parking lot" and approached as soon as he saw Koffie. Nguot began to speak about the fight that occurred the night before, and he became agitated and wanted to speak with Dosseh. Koffie testified that he took out his cell phone to call Dosseh but that as soon as he turned around, Nguot began to punch him. Koffie dropped his cell phone while trying to defend himself. According to Koffie, Nguot continued to punch him in his head and ears and told Koffie that he would kill him. Koffie also indicated that in addition to threatening to kill him, Nguot used profanities and racial slurs during the attack. Koffie testified that "when my cellphone fall [sic] he grabbed the phone and he told me that I wouldn't get my phone back."

Koffie testified that at some point, Nguot ran to a red car, occupied by another individual, and retrieved a metal object "like a wrench or something -- those tools you used to fix tires." Koffie approached Nguot, but Nguot walked toward Koffie with the metal object, continued to utter profanities and racial slurs, and tried to hit Koffie, so Koffie stepped back. Nguot then approached a car belonging to Koffie's girlfriend, which was parked in the banquet hall parking lot and asked if it was Dosseh's car before beginning to smash the car's windows. At some point, Koffie ran toward the street looking for help.

During his trial testimony, Koffie was shown exhibit 1, the photo sent to Dosseh by text message. Koffie testified that he recognized the person depicted in the photo as Nguot, and he confirmed that the person depicted in the photo was the same person who threatened and punched him and took his phone.

A copy of the security video from the surveillance system at the banquet hall for the period between 12:17 p.m. and 12:55 p.m. on April 9, 2017, was received into evidence. The view on the video shows the parking lot in front of the banquet hall, and there is a blue car parked in front of the banquet hall throughout the video. At about 12:20 p.m., an individual in a white shirt with some words in black lettering on it, dark jeans, and red and white shoes appears on the video outside the banquet hall. One of the investigating police detectives testified that the white shirt with black lettering in the video was consistent with the shirt Nguot is wearing in the photograph sent via text message to Dosseh. On the video, the individual walks back and forth in and out of camera view a few times over the course of about 5 minutes, and he can be seen speaking on a phone at one point. When the individual's back is to the surveillance camera, black lettering is visible on the back of the white shirt. After this 5-minute period, no activity is visible on the video until about 12:43 p.m. when a red car drives into view and stops in the parking lot. The surveillance video shows an individual in what appears to be the same jeans and red and white shoes but now wearing a long-sleeved red shirt exit from the driver's side of the red vehicle, walk toward the banquet hall, and disappear from view. The police detective testified that the shoes, pants, and build of this individual were consistent with those of the individual previously seen on camera in the white shirt with black lettering.

At about 12:46 p.m., the person in the red shirt walks back into view and gets back into the red car, which circles the parking lot before the person in the red shirt again gets out and walks toward the banquet hall, disappearing from view a second time. At about 12:52 p.m., a bobbing head can be seen in the bottom right corner of the video, and the person in the red shirt appears on camera chasing a person in a dark shirt. The person in the red shirt retrieves something from the

- 3 -

red vehicle and begins hitting the parked blue car with an object. The person with the dark shirt advances with his arms stretched out toward the person hitting the blue car. The person in the red shirt moves toward the person in the dark shirt, and the person in the dark shirt turns and runs out of view. The person in the red shirt appears to take several photos with a device before entering the driver's door of the red car and quickly driving away, although from the video it is not possible to tell whether he was taking pictures of the damaged vehicle or of himself.

Police arrived on the scene, interviewed Koffie, and photographed his injuries, which included abrasions on his face, ears, and wrist. Photographs of Koffie's injuries and the damaged vehicle were received in evidence.

On the evening of April 9, 2017, Dosseh had another fundraising event at the banquet hall. Koffie testified that Nguot returned to the banquet hall that evening and stated that when Koffie asked Nguot to return his phone, Nguot asked him if he wanted to fight and "moved his hand, like he's trying to fight." The police were called again, but they were unable to locate Koffie's phone in Nguot's vehicle. Nguot left the premises after his contact with law enforcement that evening.

After the State rested its case, Nguot's girlfriend testified on his behalf. According to the girlfriend, Nguot was home all day on April 9, 2017, from 6 a.m. until 10 p.m. However, she testified that the phone number, shown on exhibit 2 as the sending phone number of the text message received by Dosseh on April 9, was the phone number used by Nguot in April 2017. The girlfriend identified the person shown in exhibit 1 as Nguot. She also testified that she recognized the white shirt with the words "New Angeles" in black lettering on the front shown in the picture in exhibit 1 to be a shirt she and Nguot had purchased around Christmas 2016. Although the shirt had a plain white back when purchased, Nguot had custom black lettering saying "Ngu Deng" screen printed on the back around New Year's Day 2017.

The jury found Nguot guilty of all three counts. The district court accepted the jury's verdict, ordered a presentence investigation, and scheduled a sentencing hearing.

At the conclusion of the sentencing hearing, the district court sentenced Nguot to 5 to 6 years' imprisonment for robbery, 1 to 2 years' imprisonment for terroristic threats, and 6 to 8 years' imprisonment for use of a deadly weapon, other than a firearm, to commit a felony. The court ordered that the sentences be served consecutively, and it gave Nguot credit for 238 days served against the robbery count. The court subsequently entered an order memorializing Nguot's sentences.

ASSIGNMENTS OF ERROR

Nguot asserts that the district court erred in (1) allowing a police detective to testify regarding Koffie's statement identifying "Deng" as his assailant, (2) allowing Dosseh to testify as to the content of a phone call between him and Nguot, (3) admitting exhibits 1 and 2, a photo and a screenshot of a text message conversation, (4) overruling Nguot's motion for mistrial after Dosseh made certain statements on the stand, (5) failing to instruct the jury on the lesser charge of theft by unlawful taking and not including the phrase "take from the person of Koffie Eli Amefia-Koffie" in the instruction regarding the elements of robbery, and (6) imposing excessive sentences.

STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.* A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Ralios*, 301 Neb. 1027, 921 N.W.2d 362 (2019).

Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds. *State v. Ferguson*, 301 Neb. 697, 919 N.W.2d 863 (2018). An appellate court reviews the trial court's conclusions with regard to evidentiary foundation for an abuse of discretion. *Id.*

Whether to grant a mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion. *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Lessley*, 301 Neb. 734, 919 N.W.2d 884 (2018).

An appellate court will not disturb a sentence imposed within statutory limits absent an abuse of discretion by the trial court. *State v. Brown*, 302 Neb. 53, 921 N.W.2d 804 (2019).

ANALYSIS

*Admission of Police Detective's Testimony.*

Nguot asserts that the district court erred in allowing a police detective to testify regarding Koffie's statement identifying "Deng" as his assailant. A police detective who interviewed Koffie on the scene following the April 9, 2017 assault and robbery testified that Koffie provided him with a description and a first name of the individual who attacked him. When the detective was asked if he recalled what the name was, Nguot's attorney objected on the bases of hearsay and foundation. The State argued that there was foundation for the statement as the detective had spoken with Koffie and documented the information he provided. The State argued further that the statement was being offered for its effect on the listener as the evidence indicated that the information collected by this detective on the scene was turned over to another detective for further investigation. The district court overruled Nguot's objections and the detective testified that the name provided by Koffie was "Deng."

Neb. Rev. Stat. § 27-602 (Reissue 2016) provides in part, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself." Nguot argues that proper foundation for the detective's testimony was not laid because there was no evidence presented to show why Koffie thought the person who attacked

him was named "Deng." His arguments do not address the foundation for the detective's testimony, which was properly laid, and go more to his assertion that the evidence was hearsay and offered for the truth of the statement that "Deng" was the individual who attacked and robbed Koffie. The record establishes that the detective was on the scene and interviewed Koffie about what had happened. The detective testified, based on his personal knowledge, to the name provided to him by Koffie. Nguot's arguments with respect to foundation are without merit.

Turning to Nguot's hearsay argument, under Neb. Rev. Stat. § 27-801 (Reissue 2016), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Testimony regarding an out-of-court identification is hearsay. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017). The Nebraska Supreme Court has stated:

> [I]n the absence of admissibility authorized under the Nebraska Evidence Rules or by other statute, a witness' pretrial statement identifying a defendant as the perpetrator of a crime is hearsay pursuant to Rule 801(3) and, therefore, is inadmissible as the result of Rule 802. This is not to say that a witness' pretrial identification of a defendant may never be admissible. Never say never. A witness' pretrial identification may be admissible in certain circumstances encompassed within the Nebraska Evidence Rules, for example, for the purpose of impeachment.

*State v. Salamon*, 241 Neb. 878, 890-91, 491 N.W.2d 690, 698 (1992).

The State argues, as it did at trial, that the detective's testimony was not admitted to prove the truth of the matter, i.e., that "Deng" was the person who attacked Koffie, but rather for its effect on the detective, i.e., it was information received from the victim that he documented and turned over to another detective for further investigation. If an out-of-court statement is not offered for the purpose of proving the truth of the facts asserted, it is not hearsay. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016). A statement offered to prove its impact on the listener, instead of its truth, is offered for a valid nonhearsay purpose if the listener's knowledge, belief, response, or state of mind after hearing the statement is relevant to an issue in the case. *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011).

Here, we need not determine whether the court properly overruled Nguot's hearsay objection as the detective's testimony was cumulative and any error in its admission was harmless. The improper admission of evidence is a trial error and subject to harmless error review. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *Id.* Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt. *Id.*

Any error in the admission of Koffie's pretrial identification of "Deng" as the assailant was harmless because it was cumulative and there was other competent evidence to support Nguot's conviction. At trial, Koffie identified Nguot as the person who punched and threatened him, took his cell phone, and approached him with a metal object. Koffie testified further that he recognized Nguot as the person who had been involved in a fight at the banquet hall the night before the assault and robbery. Dosseh testified that the person who called him just before the criminal acts in this

case identified himself as "Deng" and that in response to Dosseh's request to send a photo of himself, the person did so. And, at trial, Dosseh identified Nguot as the person depicted in the photo he received; he also stated that the photo depicted the individual involved in the fight the previous night. The text message and photo received into evidence as exhibits 1 and 2 and the surveillance video of the incident at the banquet hall depict a man wearing a distinctive custom-screen printed shirt. Testimony from Nguot's girlfriend establishes that the phone number at the top of the text message exhibit was the number used by Nguot in April 2017. Her testimony also shows that Nguot owned a shirt like that shown in the texted photo and the surveillance video, and she identified the person depicted in the photo as Nguot. Even without the detective's testimony about Koffie's pretrial identification of his assailant as "Deng," there was sufficient properly admitted evidence to establish that Nguot was the person who attacked and threatened Koffie and took his phone. Nguot's arguments about the admission of the detective's testimony are without merit. Nguot has assigned error to the admission of Dosseh's testimony about the phone call and the admission of exhibits 1 and 2, and we have addressed those arguments below.

*Admission of Dosseh's Testimony About Phone Call Content.*

Nguot asserts that the district court erred in allowing Dosseh to testify as to the content of a phone call between him and Nguot. Nguot argues that "the statements made by the caller were not subject to the statement by a party opponent hearsay exception because proper foundation was not laid due to the State's inability to authenticate the identity of the caller" as Nguot. Brief for appellant at 19. He also argues that Dosseh's request for the caller to send a photo of himself was also hearsay because it was offered to prove the truth of the matter asserted, that Nguot was the caller. Contrary to Nguot's assertions, both the statements of the caller, whom the record establishes as being Nguot, and those of Dosseh were properly admitted.

Nguot's statements were properly admitted as nonhearsay statements of a party opponent. A statement that is offered against a party and is his own statement, in either his individual or a representative capacity, is not hearsay. § 27-801(4)(b)(i). Clearly, any statements made by Nguot to Dosseh would not be hearsay, but Nguot's argument on appeal is premised on his assertion that the State failed to sufficiently authenticate the caller's identity as Nguot.

Neb. Rev. Stat. § 27-901 (Reissue 2016) requires authentication or identification of evidence sufficient to support a finding that a matter is what the proponent claims as a condition precedent for admission. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). Authentication or identification under § 27-901, is not a high hurdle. *State v. Burries, supra.* A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity. *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018). If the evidence is sufficient to support a finding that the evidence is what it purports to be, the rule is satisfied. *State v. Burries, supra.* The identity of a participant in a telephone conversation may be established by circumstantial evidence such as the circumstances preceding or following the telephone conversation. *Id.* Also, the State must prove by a greater weight of the evidence that a defendant authored or made a statement in order to establish preliminary admissibility as nonhearsay under § 27-801(4)(b)(i). *State v. Savage, supra.*

Contrary to Nguot's assertion, the State met its burden for authentication regarding the identity of the individual who called Dosseh. The text message received by Dosseh shows a

particular phone number, which Nguot's girlfriend testified was the phone number used by Nguot in April 2017. Dosseh testified that the caller identified himself "Deng something" and that the caller referred to having been thrown out of the banquet hall the previous evening for fighting. Dosseh also identified Nguot in court as the person who had been thrown out of the banquet hall the previous evening. Dosseh's testimony about the phone call and subsequent events he viewed remotely via the surveillance system are consistent with what is shown in the surveillance video received into evidence. The surveillance video shows an individual in a white shirt with black lettering walk up to the entrance of the banquet hall just before the phone call and later walking away from the banquet hall while talking on a phone. The text message received by Dosseh after asking the caller for a photo of himself is time-stamped 12:27 p.m. The photo Dosseh received shows an individual wearing a white shirt with black lettering sitting inside a reddish vehicle, which is consistent with the time-frame of and what is depicted in the surveillance video. The text message states "thay [sic] me." And, as previously noted, the individual depicted in the photo was identified in court as Nguot. Further, there is evidence identifying the shirt depicted in the photo as belonging to Nguot. The circumstances surrounding the phone call are sufficient to establish that Nguot was the caller. The State also met its burden with respect to admissibility of these statements as nonhearsay under § 27-801(4)(b)(i). Based on the above evidence about authentication, the State's evidence authenticating the caller's identity as Nguot satisfied the greater weight of the evidence standard for the admission of Nguot's statements on the call as statements of a party opponent. The district court did not err in overruling Nguot's hearsay objection in this regard.

Turning to Dosseh's statements, they were properly received for a valid nonhearsay purpose, in other words, their effect on Nguot, who responded to Dosseh's request to send a picture of himself by doing so and by sending a text message stating "thay [sic] me." See *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011) (statement offered to prove its impact on listener, instead of its truth, is offered for valid nonhearsay purpose if listener's knowledge, belief, response, or state of mind after hearing statement is relevant to issue in case). See, also, *State v. Wynne*, 24 Neb. App. 377, 887 N.W.2d 515 (2016) (text messages attributed to victim were not hearsay as they were offered to show their effect on defendant, i.e., how he responded to proposed drug transaction). Because Dosseh's statements were offered to show their effect on Nguot, i.e., how he responded to the request to send a picture of himself, they were not hearsay, and the district court did not err in overruling Nguot's objection.

*Admission of Exhibits 1 and 2.*

Nguot asserts that the district court erred in admitting exhibits 1 and 2, a photo and a screenshot of a text message conversation. He argues that the exhibits were not properly authenticated and were hearsay.

As previously stated, authentication or identification under § 27-901, is not a high hurdle and a proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity. See *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017), and *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018). Generally, the foundation for the admissibility of text messages has two components: (1) whether the text messages were accurately transcribed and (2) who actually sent the text messages. *State v. Savage,*

*supra*. The proponent of text messages is not required to conclusively prove who authored the messages. *Id.* The possibility of an alteration or misuse by another generally goes to weight, not admissibility. *Id.* And, again, the State must prove by a greater weight of the evidence that a defendant authored or made a statement in order to establish preliminary admissibility under § 27-801(4)(b)(i). See *State v. Savage, supra*.

The State met its burden of authentication with respect to exhibits 1 and 2. We have already discussed the evidence authenticating the caller's identity as Nguot, including the fact that the phone number shown in the screenshot of the text message was the number used by Nguot in April 2017, and do not repeat that discussion here. The State was not required to conclusively show that the text message was authored and the photo were sent by Nguot. Given the evidence that the photo is of Nguot and shows him wearing a shirt owned by Nguot, and that it was sent during the time frame when an individual wearing a similar shirt was seen on the surveillance video in a car the color of the car visible in the photo, it seems unlikely that the text and photo were sent by anyone else. The text message and photo were properly authenticated.

Further, the district court did not err in overruling Nguot's hearsay objection to the admission of exhibits 1 and 2. Given the evidence with respect to authentication, the State satisfied its burden with respect to a preliminary determination on hearsay. Exhibits 1 and 2 were properly admitted as statements of a party opponent. This assignment of error is without merit.

*Motion for Mistrial.*

Nguot asserts that the district court erred in overruling his motion for mistrial after Dosseh made certain statements on the stand. At trial, when Dosseh was being questioned by the prosecutor about exhibits 1 and 2, the following exchange occurred:

Q. And did you recognize the person that was depicted in the photo [received by text]?

A. Yes.

Q. And who did you recognize that person to be?

A. Him.

Q. Okay. Him being the Defendant?

A. Yes.

Q. And is that the same Defendant, that's the person who fought in your club the night before?

A. Yes, sir.

Q. That's what you were talking about on the phone?

A. Uh-huh.

THE COURT: Is that a yes?

[DOSSEH]: Yes, I'm sorry. Sorry boss.

THE COURT: Thank you.

[DOSSEH]: Your Honor, what's going on? That's him. He knows he did it.

THE COURT: We just want to make sure uh-huh's and stuff are heard.

[DOSSEH]: I'm sorry.

[NGUOT'S ATTORNEY]: I'd move to strike all of that.

THE COURT: He's going to ask you a question.

[THE PROSECUTOR]: You just have to answer the questions.

THE COURT: Ladies and Gentlemen, I'm ordering you to disregard any statements made to the court by the witness as it was not a result of a question and disregard that in its entirety. It might be a good [time] for our lunch break.

The court then excused the jury for its lunch break, and Nguot's attorney made a motion for a mistrial. The court denied Nguot's motion, finding that its admonition to the jury to disregard Dosseh's statements was sufficient to cure any potential prejudice. The court also asked the prosecutor "to please have a little bit of time with [Dosseh] to talk about only being responsive to the State's questions or to Defendant's questions."

A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018). A trial court is vested with considerable discretion in passing on a motion for mistrial in order to more nearly effectuate the ends of justice. *Id.* The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017). Events that may require the granting of a mistrial include egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of incompetent matters. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material. *State v. McCurry, supra*.

The State argues that the meaning of Dosseh's statement, "That's him. He knows he did it," is somewhat vague in context. We agree. The statement was made just after the prosecutor elicited testimony that Nguot was the individual depicted in exhibit 2 and who had been ejected from the banquet hall for fighting and that the ejection from the banquet hall was being discussed in the phone call received by Dosseh. Accordingly, it is not clear whether Dosseh's statement of "he knows he did it" refers to the fight and ejection from the banquet hall or whether Dosseh was referring to the charges at issue in this case. Regardless, as soon as the statement was made, Nguot's attorney objected, and the district court admonished the jury to ignore it. Given the lack of clarity regarding the comment and the court's admonition, Nguot cannot show that he was prejudiced by court's failure to grant his motion for mistrial made directly after the admonition. This assignment of error is without merit.

*Jury Instructions.*

Nguot asserts that the district court erred in failing to instruct the jury on the lesser charge of theft by unlawful taking and not including the phrase "take from the person of Koffie Eli Amefia-Koffie" in the instruction regarding the elements of robbery. Nguot argues that "Mr. Koffie testified that the phone was not taken from his person but rather from the ground after the altercation" and that therefore the jury should have been instructed on the lesser included offense and that it should specifically have been instructed that the object must be taken from "the person of" Koffie. Brief for appellant at 25.

- 10 -

The instruction given by the district court reads:

Depending on the evidence, you may return one of two possible verdicts to Count I of the Amended Information. You may find the Defendant:

(1) Guilty of Robbery; or

(2) Not guilty.

The elements of the crime of Robbery, as charged in Count I of the Amended Information, are:

1. That the Defendant, on or about April 9, 2017, did forcibly, and by violence, or by putting in fear, take from Koffi Eli Amefia-Koffie money or personal property of any value with the intent to steal; and

2. That the Defendant did so in Douglas County, Nebraska.

If you decide that the State proved each element of Robbery beyond a reasonable doubt then you must find the Defendant guilty. Otherwise, you must find the Defendant not guilty.

The proposed jury instruction proffered by Nguot added the option for the jury to find him guilty of theft by unlawful taking, altered the elements of robbery to state "take from *the person of* Koffi Eli Amefia-Koffie" (emphasis supplied), and set forth the elements of theft by unlawful taking. Nguot's proposed instruction also provided the jury with direction regarding its separate consideration of the crimes of robbery and theft by unlawful taking, directing it to consider the elements of theft by unlawful taking only if it had already determined that the State had not proven the elements of robbery beyond a reasonable doubt.

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *Id.* To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Id.*

Nguot was charged with robbery in violation of § 28-324. Under that statute, "A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever." In giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute. *State v. Swindle, supra*. The instruction given by the court described the offense in the language of the statute with the exception of stating "take from . . . Koffie" rather than "take from the person of . . . Koffie." However, the taking of property in a robbery need not be from the "person." *State v. Martin*, 232 Neb. 385, 440 N.W.2d 676 (1989). It is sufficient if it is taken from the individual's personal presence, protection, or control. *Id.* The jury instruction given by the district court with respect to the elements of robbery when read together and taken as a whole with the other instructions given, correctly states the law, is not misleading, and adequately covers the

issues supported by the pleadings and the evidence. Nguot's arguments to the contrary are without merit.

Next, we address Nguot's argument that the district court should have instructed the jury on theft by unlawful taking as a lesser included offense of robbery. A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). To determine whether one statutory offense is a lesser-included offense of the greater, Nebraska courts look to the elements of the crime and not to the facts of the case. *Id.* The test for determining whether a crime is a lesser-included offense is whether the offense in question cannot be committed without committing the lesser offense. *Id.*

We have already set forth the elements of robbery pursuant to § 28-324, the crime with which Nguot was charged. With respect to the elements of theft by unlawful taking, Neb. Rev. Stat. § 28-511(1) (Reissue 2016) provides that "[a] person is guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof." Also, the State must prove, beyond a reasonable doubt, the value of the property that is the subject of the theft charge. *State v. Connor*, 16 Neb. App. 871, 754 N.W.2d 774 (2008). See Neb. Rev. Stat. § 28-518(8) (Reissue 2016) (value shall be essential element of offense in prosecutions for theft under sections 28-509 to 28-518 that must be proved beyond reasonable doubt). While § 28-518(8) now requires that intrinsic value be proved beyond a reasonable doubt as an element of the offense, proof of a specific value at the time of the theft is necessary only for gradation of the offense. *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002).

Robbery and theft both involve the intentional taking of another's property. The greater offense of robbery differs only in that the property is taken forcibly and by violence or putting in fear. The elements of theft are such that one cannot commit the greater offense of robbery without also committing the lesser offense of theft. Accordingly, Nguot was entitled to an instruction on the lesser included offense if the evidence was sufficient to produce a rational basis for acquitting him of the greater offense of robbery and convicting him of theft. We conclude that it was not.

In this case, there is no evidence to support a jury finding that Nguot took Koffie's cell phone without use of force. Nguot argues that Koffie testified his phone was not taken from his person but rather from the ground after the altercation, but a review of Koffie's actual testimony shows that he pulled out his phone while talking to Nguot and as soon as he turned around, Nguot punched him. Nguot continued to strike Koffie, who dropped the phone in the process of trying to defend himself. While striking Koffie, Nguot used profane language and racial slurs, and he threatened to kill Koffie. Koffie testified that Nguot then ran to his car, but before reaching the car, Nguot grabbed Koffie's phone from the ground and told Koffie that he would not get the phone back. As we previously noted, the taking of property in a robbery need not be from the "person" and can be taken from an individual's personal presence, protection, or control. See *State v. Martin*, 232 Neb. 385, 440 N.W.2d 676 (1989). And, clearly, Nguot used violence in the altercation. There is no evidence that the phone was not taken from Koffie's presence. When the prosecution has offered uncontroverted evidence on an element necessary for a conviction of the greater crime but not necessary for the lesser offense, the defendant must offer some evidence to dispute this issue

if he or she wishes to have the benefit of a lesser-offense instruction. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008). Nguot has not done so in this case. The jury instruction given by the district court sufficiently and correctly stated the law. Nguot was not entitled to a lesser included offense instruction. This assignment of error is without merit.

*Excessive Sentence.*

Nguot asserts that the district court erred in imposing excessive sentences. Nguot was convicted of robbery, a Class II felony, and sentenced to imprisonment for 5-6 years; terroristic threats, a Class IIIA felony, and sentenced to imprisonment for 1-2 years; and use of a deadly weapon, other than a firearm, to commit a felony, a Class II felony, and sentenced to imprisonment for 6-8 years. § 28-324; § 28-311.01; § 28-1205. The district court ordered his sentences to be served consecutively. Class II felonies are punishable by 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Supp. 2017). Class IIIA felonies are punishable by up to 3 years' imprisonment and 18 months' postrelease supervision, a $10,000 fine, or both; there is no minimum term of imprisonment, but there is a minimum of 9 months' postrelease supervision if imprisonment is imposed. § 28-105. However, Nguot was not subject to the postrelease supervision portion of the sentence that normally accompanies a Class IIIA felony because he was also sentenced to imprisonment for Class II felonies. See § 28-105(6). Nguot's sentences were therefore within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Smith*, 302 Neb. 154, ___ N.W.2d ___ (2019). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* However, the sentencing court is not limited to any mathematically applied set of factors. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Smith, supra*.

In sentencing Nguot, the district court stated that it had considered the information and argument presented at the sentencing hearing, the information contained in the presentence investigation report, and its observations in presiding over the trial, as well as the factors which we have set forth above. The court stated as follows:

I do find indeed that these are serious offenses, that very well could have ended in the loss of life or more injuries to the victim here. You were calculated. The Defendant had the opportunity to have stopped. He came back to seek out the victim in the establishment and cause the havoc that he caused here.

Nguot was 24 years old at the time of the presentence investigation. He has an associate's degree. Nguot was most recently employed at a company in Omaha between December 2016 and

April 2017, but he was terminated from this employment upon his arrest in this case. Nguot's first contact with law enforcement was in 2008 for shoplifting, which was disposed of via juvenile diversion. As an adolescent, Nguot was also cited with littering, stealing money or goods, and making false statements to a police officer, for which he received fines and community service. As an adult, Nguot has been convicted of multiple theft charges, possession of marijuana, "Refuse to Submit to Test," disorderly conduct--fighting or violent behavior, and multiple traffic offenses. He was sentenced to probation for the refusal, with his probation being revoked on April 19, 2017, due to not paying fines and fees, failing to report for drug testing on two occasions, failing to attend an alcohol/drug education program, and failing to attend a victim impact panel. Nguot was sentenced to 10 days' jail time and a 6-month license revocation. Nguot was sentenced to 1 year of unsupervised probation in Iowa, but it is unknown if he completed this successfully. He advised the probation officer that he was placed in confinement for two instances of institutional misconduct while in jail on the instant charges. According to the presentence report, Nguot has received several institutional misconduct reports, including fighting on multiple occasions, failure to comply and/or threatening an officer on multiple occasions, and threatening an inmate. On the Substance Abuse Questionnaire, Nguot scored in the problem risk range on the truthfulness and alcohol scale and the medium risk range on the drugs scale. On the Level of Service/Case Management Inventory, Nguot scored in the high-risk range for recidivism.

The district court did not abuse its discretion in considering the relevant factors and did not impose excessive sentences. Accordingly, we affirm Nguot's sentences following his convictions.

## CONCLUSION

The district court did not err in overruling Nguot's evidentiary objections. The court did not abuse its discretion in denying his motion for mistrial or in sentencing him. Accordingly, we affirm.

AFFIRMED.